**WINCHESTER MANAGEMENT CORPO-
RATION, Appellant,**

v.

**Clara L. STATEN and Elizabeth S. Belton
et al., Appellees.**

**Clara L. STATEN and Elizabeth S. Belton
et al., Appellants,**

v.

**WINCHESTER MANAGEMENT CORPO-
RATION, Appellee.**

**Nos. 8157, 8163.**

District of Columbia Court of Appeals.

Argued Jan. 21, 1975.

Decided July 14, 1976.

Dorothy Sellers, Washington, D.C., for Winchester Management Corp., Aubra Anthony, Washington, D.C., also entered an appearance.

Roger C. Wolf, Washington, D.C., for Clara Staten et al.

Before FICKLING, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This case is before us on cross-appeals from the Landlord and Tenant Branch of the Civil Division of the Superior Court. The landlord, Winchester Management Corporation, originated 24 separate suits for possession of property for nonpayment of rent; the cases subsequently were consolidated. The tenants contended that they were entitled to withhold portions of their rent because their apartments were without hot water and air conditioning for a substantial part of the summer of 1973. Following a nonjury trial, the court awarded the tenants rent reductions commensurate with the deficiencies in hot water and air conditioning during that period. The court conditioned the imposition of possessory relief on the payment by the tenants of the rental arrearages after credit had been given for the reductions. On appeal the landlord challenges: (1) the trial court's finding that all of the tenant-defendants were deprived of hot water and air conditioning for the period involved, and (2) the trial court's suspension of portions of the tenants' rental obligations for deficient air conditioning. On cross-appeals, the tenants seek an increase in the amount of the

rent setoffs based upon the lack of air conditioning and a reversal of the trial court's finding that other alleged deficiencies in the common areas and individual apartments were not substantial enough to warrant further rent reductions.

This case presents two related questions of first impression: (1) whether a landlord's obligation to maintain habitable premises [1] is the sole obligation the breach of which will operate to suspend a tenant's obligation to pay rent; and (2) whether this implied warranty of habitability coincides exclusively with the requirements of the Housing Regulations of the District of Columbia, i. e., whether deficiencies not covered by the housing code can render an apartment legally uninhabitable. We conclude that the tenant may be relieved of his full contractual rental obligation only when the landlord breaches his implied warranty of habitability, and that the landlord's duties under such a warranty are discharged when he has complied with the applicable standards set forth in the Housing Regulations. We accordingly reverse the trial court's order insofar as it authorized rent setoffs for deficient air conditioning, since that circumstance, in our view, violated no provision of the housing code. We affirm the trial court's order in all other respects.

The Winchester-Underwood apartment building is comprised of 80 apartments and is approximately 15 years old. In April 1973, Mrs. Frances Wright, as president of the Winchester-Underwood tenants' association, wrote to the management complaining of the conditions in the building and requesting a meeting between management and tenant representatives. A meeting took place in May 1973, at which management promised to pursue the complaints and be back in touch with the tenants. Apparently no corrective steps were taken, and in July, the tenants, again through Mrs. Wright, sent the landlord another letter, complaining chiefly about a lack of hot water and air conditioning. Attached to that letter were reduced rent checks for the month of July. The landlord refused to accept the checks, and twice returned them to the tenants. After rejecting the reduced checks for the second time, the landlord filed possessory actions.

■ At trial, Mrs. Wright was the principal witness for the tenants. She testified that she kept daily records of the days during which she and other tenants were without hot water and air conditioning.[2] Three other tenants testified that they also kept informal charts of the extent to which their apartments were supplied with hot water and air conditioning, and that their records agreed with Mrs. Wright's. The resident manager of the building, the landlord's witness, admitted that throughout that particular summer, the water was cold almost as often as it was hot. The landlord's assistant property manager, also a resident of the building, testified both to the frequency of the lack of hot water and to the fact that the entire building was serviced by the same boilers. In light of this and other evidence, the trial court's finding that all tenant-defendants were without adequate hot water for 69 days in the summer of 1973 was neither plainly wrong nor without evidence to support it.[3] Finding that the tenants were without a continuous supply of hot water in violation of the Housing

1. *Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970).

2. Floor representatives would report to Mrs. Wright whether the tenants on a particular floor were serviced with hot water or air conditioning. The entries on her records reflect their consensus.

3. D.C.Code 1973, § 17–305, authorizes us to review both the facts and the law when a case has been tried without a jury. However, the trial court's judgment is not to be set aside unless it is plainly wrong or without evidence to support it.

Regulations,[4] the trial court properly went on to determine what portions of the tenants' rental obligations should be abated for this breach of the landlord's warranty.[5] *See Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L. Ed.2d 185 (1970).

We do not, however, sustain the trial court's finding that the tenants' obligations to pay rent were suspended by the intermittent failure of the air conditioning equipment. The trial court found that the landlord agreed to provide air conditioning to its tenants and that a significant portion of the rent paid was in consideration for that service, but. it does not follow from that finding that the tenants were entitled to withhold rent when the air conditioning failed, or that the tenants could assert such failures as a defense in a possessory action for nonpayment of rent.

The tenants urged, and the trial court adoped, the view that the *Javins* decision, *supra,* by declaring that "leases of urban dwelling units should be interpreted and construed like any other contract", portended a mutual interdependence of the obligation of the tenant to pay rent and any obligation, oral or written, of the landlord to the tenant. We do not read *Javins* so broadly, nor do we think it would be wise to do so. *Javins* held that "a warranty of habitability, measured by the standards set out in the Housing Regulations for the District of Columbia, is implied by opera-

tion of law into leases."[6] We do not now stray from nor expand upon that holding.

In our view the mutuality of the contractual relationship between tenant and landlord properly is seen as the payment of rent in exchange for the providing and maintaining of a livable dwelling.[7] The *Javins* court recognized as much when it stated that the tenant "may legitimately expect that the apartment will be fit for habitation for the time period for which it is rented", and that "[i]t is precisely such expectations that the law now recognizes as deserving of formal, legal protection."[8] Therefore, since the tenant's liability for the rent is predicated upon the receipt of habitable housing, only the breach, in whole or in part, of the landlord's covenant to provide habitable housing abrogates the tenant's responsibility for rent. To hold otherwise could have the potentially devastating effect of depriving the landlord of the rental income needed to maintain the premises and correct any defective conditions about which the tenants complain.

We define habitable housing as those dwelling units which substantially comply with the standards detailed in the Housing Regulations. We are satisfied that the housing code represents the legislative evaluation of the requirements of habitability, and that the requirements set forth therein are both strict and comprehensive. Moreover, they provide accessible and objective criteria by which to judge the landlord's satisfaction of his warranty.

4. Housing Regulations of the District of Columbia, § 2402 (1956).

5. All but four of the leases involved contained a provision exculpating the landlord from liability due to the discontinuance of hot water. The landlord did not attempt to argue that such clauses released it from its duties under the housing code, presumably realizing that such duties "may not be waived or shifted by agreement." *Javins v. First National Realty Corp., supra,* at 379–80, 428 F.2d at 1081–82. *See Tenants Council of Tiber Island-Carrollsburg Square v. DeFranceaux,* 305 F. Supp. 560, 563 (D.D.C.1969).

6. *Javins v. First National Realty Corp., supra,* at 370–71, 428 F.2d at 1072–73.

7. Other courts agree that these two reciprocal commitments comprise the essence of the landlord-tenant contractual relationship. *See King v. Moorehead,* 495 S.W.2d 65, 75 (Mo.App. 1973) ; *Boston Housing Authority v. Hemingway,* 363 Mass. 184, 293 N.E.2d 831, 842 (1973) ; *Fritz v. Warthen,* 298 Minn. 54, 213 N.W.2d 339, 341 (1973) ; *Foisy v. Wyman,* 83 Wash.2d 22, 27, 515 P.2d 160, 164 (1973).

8. *Javins v. First National Realty Corp., supra,* at 377, 428 F.2d at 1079.

We share the views expressed by Justice Quirico of the Supreme Judicial Court of Massachusetts:

> The present situation . . . is not one of a void in the law with reference to what is required of dwelling units to constitute "fitness for human habitation" . . . . [W]e have had considerable legislative and administrative attention and action on this subject. . . . In short, the field has been occupied, and the void, if any, has been filled. It remains for the courts only to accommodate their rules of common law to enable tenants ˙to enforce against landlords these mandatory, detailed, precise and easily understandable minimum standards of fitness of dwelling units for human occupation, rather than to create a new implied and undefined obligation which will require years of litgation to develop and define.[9]

Indeed, it was a desire to be consistent with the announced legislative policy of requiring habitable living space which led the courts to imply a warranty of habitability into the modern lease.[10] Thus, rather than leaving it to the whim of the tenant and the discretion of the trial court to determine what does and does not constitute a habitable dwelling for purposes of the landlord's warranty, we defer to the legislative judgments on the standards of habitability.

It remains to be decided whether the deficient air conditioning of which the tenants complained constituted a violation of the housing code. The Housing Regulations do not refer to air conditioning at all, but rather to mechanical ventilation.[11] The Regulations provide that every habitable room shall have either natural or mechanical ventilation, and set forth the requirements for the necessary openings, air recirculation, and air quality.[12] The housing code does not mandate the maintenance of an air conditioning system as a prerequisite of habitability. Rather, it requires that all rooms be provided with some means of ventilation, and where the landlord provides mechanical ventilation in lieu of natural ventilation, he must keep it in continuous working order to insure the habitability of the dwelling. The record in this case reveals that the tenants were at all times possessed of functioning windows to permit the natural ventilation of their apartments, and they did not depend on the air conditioning system as their sole or primary source of air. With no explicit direction from the housing code making cool air in the summer vital to the use of these (or any) apartments, we would be exceeding the proper limits of our authority to read in such a provision.

Our decision today does nor repudiate the tenants' right to seek redress for the landlord's failure to provide the promised air conditioning service during those periods in which the system was not functioning. We hold merely that such redress may not be sought by means of an equitable defense to an action for possession for nonpayment of rent, for such a grievance is insufficient to justify the withholding of rent and defeat a landlord's possessory action.[13]

---

9. *Boston Housing Authority v. Hemingway,* *supra* note 7, at 851 (Quirico, J., concurring in part and dissenting in part).

10. *See Javins v. First National Realty Corp.,* *supra,* at 374–75, 428 F.2d at 1076–77; *Pines v. Perssion,* 14 Wis.2d 590, 111 N.W.2d 409 (1961); *Jack Spring, Inc. v. Little,* 50 Ill. 2d 351, 280 N.E.2d 208 (1972); *King v. Moorehead, supra* note 7; *Foisy v. Wyman, supra* note 7.

11. Housing Regulations of the District of Columbia, §§ 2203 and 2408 (1956).

12. *Id.* § 2203.

13. Super.Ct.L & T R. 5(b) governs the assertion of defenses and counterclaims in such possessory actions. It provides:
> (b) *Counterclaims.* In actions in this branch for recovery of possession of property in which the basis of recovery is non-

The tenants' answers to the landlord's complaints did not attempt to counterclaim for money damages, but merely asserted the affirmative *Javins* defense of a breach of the implied warranty of habitability based on housing code violations, through which they sought to justify their nonpayment of rent. Rule 5(b) of the Landlord and Tenant Rules allows the assertion of a counterclaim for a money judgment only when based on the payment of rent or on expenditures claimed as credits against rent. However, when the tenants unjustifiably withheld those portions of the rent which they asserted to have been equivalent in value to their loss of air conditioning, they could no longer properly assert a counterclaim for money damages for that amount. Had the tenants paid those sums, pursuant to their rental obligation, rather than withhold them, a counterclaim for money damages based upon such payment might have been available to them in the possessory actions. (The merits of any possible independent actions against the landlord for breach of contract stemming from the air conditioning breakdowns need not be considered here.) [14]

---

payment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this branch. This exclusion shall be without prejudice to the prosecution of such claims in other branches of the court.

Rule 5(b) is procedural only. It neither confers new substantive defenses nor legitimizes a default in rent by the tenant. Thus, while the rule permits the interposition of claims of recoupment or setoff, it is silent with respect to the nature of the claims which thus are cognizable.

The equitable defenses of recoupment and setoff are counterdemands which may reduce or defeat a plaintiff's claim. No affirmative recovery is allowed on such defenses. *See* 3 Moore's Federal Practice ¶ 13.02 note 2. Thus it follows that where, as here, the landlord's sole action is a possessory one based upon nonpayment of rent, the only germane defenses in the nature of recoupment or setoff are those which would be sufficient, in whole or in part, to defeat, the landlord's claim that the tenants unjustifiably failed to pay rent. Unless rent is owed, the landlord is not entitled to possession. However, a right in the tenant to withhold rent is recognized only where there has been a breach of the warranty of habitability as a result of the existence of housing code violations. Through a defense interposed on that basis, a tenant can seek to prove that no rent is owed because his default was justified. In the unique context of a landlord's summary suit for possession, a defense premised upon a failure of the landlord to perform other obligations is inappropriate. Such a failure on the part of the landlord is irrelevant in assessing the propriety of possessory relief, for a tenant is not entitled to withhold rent based on any other asserted breach of contract.

Our dissenting colleague directs the reader to those cases which authorize the trial court to determine the amount of rent in arrears even in a purely possessory action. However, as the cases cited make clear, "[t]his determination . . . is but incidental to the primary claim which remains basically and essentially one for possession." *George Y. Worthington & Son Management Corp. v. Levy*, D.C.App., 204 A.2d 334, 336 (1964). The purpose of determining the rent in arrears is to allow the tenant to avoid eviction by paying the rent due. This procedure was followed by the trial court in the instant case. However, the power to assess the amount of rent owed in a summary possessory action does not give rise to an expanded authority simultaneously to adjudicate all conflicting claims between the landlord and tenant. *See, e. g., Tutt v. Doby*, 148 U.S.App. D.C. 171, 174–75, 459 F.2d 1195, 1198–99 (1972).

14. While the avoidance of a multiplicity of actions is an obviously salutary judicial goal, an equally valid and well-recognized objective is the prompt settlement of possessory disputes. *See Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); D.C. Code 1973, §§ 16–1501–1503, 45–910; Super. Ct.L & T R. 1. We decline to further defeat the summary nature of a possessory action by sanctioning the resolution therein of additional claims which the tenant might seek to interpose. We perceive no unwarranted burden on the tenant resulting from our holding which would outweigh the effect an opposite holding would have on the already-impeded and overburdened summary possessory proceedings. The disadvantage at which the landlord finds himself during such litigation has been recognized. *See Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 109, 430 F.2d 474, 482 (1970).

Finally, we find no error in the trial court's conclusions that the other deficiencies complained of (in the common areas and in certain particular apartments) were either insubstantial or had been remedied and, therefore, did not call for further rent reductions.

We affirm the trial court's order of rent setoffs for lack of hot water, reverse the setoffs granted for lack of air conditioning service, and remand the cases for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*

FICKLING, Associate Judge (dissenting in part):

The majority contravene both the express language of Super.Ct. L & T R. 5(b) and established case law in this jurisdiction when they state (at p. 191) that:

Our decision today does not repudiate *the tenants' right to seek redress for the* landlord's failure to provide the promised air conditioning service during those periods in which the system was not functioning. We hold merely that such redress may not be sought by means of an equitable defense to an action for possession for nonpayment of rent, for such a grievance is insufficient to justify the withholding of rent and defeat a landlord's possessory action.

I dissent from this holding and would affirm the trial court's judgment allowing the set-off for failure to provide air conditioning as provided in the rental agreement.

Rule 5(b) clearly allows a tenant to assert the equitable defense of set-off in an action for recovery of possession for nonpayment of rent. Rule 5(b) provides in pertinent part:

In actions in this branch for recovery of possession of property *in which the basis of recovery is nonpayment of rent* . . . the defendant may assert an

equitable defense of recoupment or set-off . . . or for equitable relief related to the premises. . . . [Emphasis supplied.]

The majority have amended this rule since they require a tenant to seek relief for the contractual breach in another action in another branch of the trial court. The majority concede that if the tenants had not withheld a portion of the rent for lack of air conditioning, the tenants might have a right under Rule 5(b) to counterclaim (or assert a set-off) in the possessory action.

In effect, the majority hold that a tenant, in order to invoke Rule 5(b), must not withhold rent for non-housing code violations. Payment of rent is not a condition precedent to asserting a set-off under Rule 5(b). No authority is cited by the majority for such a novel requirement, and such holding is nothing more than legislating an amendment to Superior Court Rule 5(b), which we have no authority to do.

In seeking to justify their departure from the clear dictate of Rule 5(b), the majority argue that a failure to provide promised air conditioning is not a *Javins* defense. Although I agree that the breach of the covenant to provide air conditioning does not constitute a housing code violation, this conclusion certainly does not defeat a tenant's right to set-off the value of the unprovided service. Rule 5(b) does not attempt to limit the right of set-off to the *Javins* situation involving code violations.

Moreover, the majority's attempt to engraft such a limitation on the right to set-off flies in the face of established case law in this jurisdiction. *George Y. Worthington & Son Management Corp. v. Levy,* D.C.App., 204 A.2d 334 (1964); *Seidenberg v. Burka,* D.C.Mun.App., 106 A.2d 499 (1954); *Zindler v. Buchanon,* D.C.Mun.App., 61 A.2d 616 (1948); *Lalekos v. Manset,* D.C.Mun.App., 47 A.2d 617 (1946). In *Lalekos,* a landlord brought suit for possession for nonpayment of rent

of an entire building leased to defendant. Although the tenant had leased all three floors of the building, the upper two floors were occupied by another party. The tenant took possession of the one unoccupied floor and offered to pay partial rent. The landlord refused these tenders and brought suit for possession. In reversing the trial court's directed verdict in favor of the landlord, this court stated at 620:

> In this jurisdiction, it is well established that a tenant sued for possession of real property for non-payment of rent may defend by an equitable defense sufficient to defeat the landlord's claim for rent in whole or in part, or may defend by way of recoupment for a total or partial failure of consideration in order to avoid circuity of action. . . . [Footnote omitted.]

Moreover, in requiring the tenants to pursue the circuitous route of bringing a separate action, the majority overlook another long-standing procedure in this jurisdiction. It is well settled that in a suit for possession for nonpayment of rent, the trial court is required to make a finding as to the amount of rent, if any, owed by the tenant. *George Y. Worthington & Son Management Corp. v. Levy, supra* at 336. This is required because a tenant has a right to pay any back rent owed anytime before or after judgment in order to stay enforcement of the judgment of restitution. *Molyneaux v. Town House, Inc.*, D.C.App., 195 A.2d 744, 746 (1963). In order to determine the amount of rent owed to avoid forfeiture, Rule 5(b) permits the tenant to recoup or set-off against the rent owed any equitable defense related to the premises. Since the trial court found that the landlord agreed to provide air conditioning and that a significant portion of the rent paid was in consideration for that air conditioning service, it is clear that under Rule 5(b) the tenants should be allowed to set-off against the rent owed the cost of air conditioning service which the landlord failed to provide.

We would have a different situation if the landlord had filed suit for possession for a reason *other than* nonpayment of rent. Moreover, we are not dealing with a case where the tenants filed a counterclaim for money damages in excess of the rent owed. Under such circumstances, it may be that a tenant should be required to pursue his remedy in another action in another branch of the trial court. Under the facts of this case, however, Rule 5(b) clearly allows a tenant to assert the set-off as a defense to the action for possession for nonpayment of rent.

In the present case, the requirement that the tenants file an independent suit in another branch of the court is unjustified. This requires resolution of disputes by a circuitous route rather than encouraging parties to litigate all of their disputes in one action and is, therefore, contrary to the policy reflected in Rule 5(b). Moreover, such a requirement might well have a chilling effect upon one wishing to assert his rights.

Accordingly, for the above reasons, I dissent.