Aaron C. BROWN, Sr., et al., Appellants,

v.

Maury YOUNG (Young & Simon, Inc.),
Appellee.

No. 10355.

District of Columbia Court of Appeals.

Submitted Sept. 15, 1976.

Decided Oct. 20, 1976.

Ely Hurwitz, Washington, D.C., was on the brief for appellants.

Samuel Intrater and Albert Brick, Washington, D.C., were on the brief for appellee.

Before KERN, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

The Landlord and Tenant Branch of the Superior Court's Civil Division ordered the appellants, operators of the Chez Brown restaurant, to return possession of their establishment's premises on 13th Street, N. W., to the landlord-appellee, Young & Simon, Inc.[1] We affirm.

I

On July 22, 1971, appellants leased the premises from its then-owners, Alfred E. Greene and Robert Bennett. The term of the lease was two years, with an option to renew for the same length of time. The lessees also were to have a right of first refusal in the event the lessors offered the property for sale. If the landlords did sell to a third party after the tenants declined to exercise their right to buy, the latter were to receive an amount equal to the unpaid portion of the rent due in the year of sale. The terms of the lease were binding upon the parties' successors in interest.

The tenants were to pay the rent to Al Stern Realty, the landlords' agent. They were to obtain possession on August 15, 1971, but could occupy the premises before then if they made their initial rent payment at an earlier date. An amendment to the lease changed the date of that first payment to September 1, 1971, and stated that all other terms of the lease were to remain unchanged.

The lease was performed, and in 1973 appellants exercised their option to renew. In June 1974, Messrs. Greene and Bennett sold the property to appellee, apparently without (a) informing appellants, (b) giving them an opportunity to exercise their right of first refusal, or (c) paying them the equivalent of the rent due for the rest of the year. Al Stern Realty continued to receive the rent without advising appellants of the fact that they had a new landlord. On July 31, 1975, appellee gave notice to appellants to quit the premises by August 31. Appellants did not vacate and a possessory action was commenced in the Landlord and Tenant Branch four days later.

On September 17, 1975, appellants filed a complaint in the Civil Division of the Superior Court, naming appellee and several other parties as defendants in a suit complaining of the alleged violations of the provisions of the lease. They sought various forms of relief, including a preliminary injunction to stay the suit for possession. The court denied the injunction and, although that order was appealable [D.C. Code 1973, § 11–721(a)(2)(A)], no appeal was taken. The Landlord and Tenant Branch also refused to stay its proceedings until the completion of the Civil Division action (which is still pending in the Superior Court). Subsequently, the court ruled that the plaintiff was entitled to possession, "without prejudice to the rights of the defendants to pursue remedies available

---

1. The suit originally was filed in the name of Maury Young, the president and chief stockholder of Young & Simon, Inc. The Superior Court granted leave to amend the caption of the complaint.

to them outside the Landlord and Tenant Branch of this Court." This appeal followed.[2]

## II

■ Appellants contend that the Landlord and Tenant Branch erred in not allowing them to defend against appellee's demand for possession on the ground that the sale of the property to it violated the terms of the lease. We agree with the trial court that such a breach is properly a subject of the Civil Division action, and should not have been considered in the summary action for possession.

■ Few defenses are available in possessory actions. Super.Ct.L & T R. 5(b) enumerates the types of defenses available, and permits their assertion only if the landlord is seeking possession based upon nonpayment of rent or is seeking a monetary judgment for rent arrearages as well as possession. For reasons of public policy, the courts also have allowed the defense of retaliatory eviction to be asserted in possessory actions, for if landlords readily could evict tenants who complained about housing code violations, tenants would be deterred from reporting such offenses, which otherwise might go undetected and uncorrected. *Edwards v. Habib,* 130 U.S.App.D.C. 126, 397 F.2d 687 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). *See also Holmes v. District of Columbia,* D.C.App., 354 A.2d

858 (1976). In contrast, while a tenant can defend against a possessory action which is based on nonpayment of rent by proof that the landlord violated housing regulations, *Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970), normally he cannot do so in a suit based upon a notice to quit. *Cf. McNeal v. Habib,* D.C.App., 346 A.2d 508, 510 n.2, 514 (1975). In short, a tenant has limited defenses when his landlord seeks repossession of the premises based on a valid notice to quit. *See McNeal v. Habib, supra,* at 511 & n.6. We are no more willing to allow a tenant to raise a defense of a breach of a lease provision unrelated to the parties' duties under public law in a suit based upon a notice to quit than in one which is based on nonpayment of rent. *See Winchester Management Corp. v. Staten,* D.C.App., 361 A.2d 187 (1976).

■ Moreover, a possessory action is not a proper proceeding for resolving the rights of third parties. *See Everett v. Miller,* D.C.Mun.App., 67 A.2d 399 (1949). The essentially contractual issues raised by appellants cannot be resolved without involving the former landlords and, in all likelihood, Al Stern Realty and others. The regular Civil Division, equipped with a full panoply of legal and equitable remedies, is better equipped than the Landlord and Tenant Branch to resolve this multiparty commercial dispute.[3]

2. Appellants contest the trial court's refusal to grant a stay of the judgment for possession. However, that is a decision which is peculiarly within the trial court's discretion, and the correctness of that ruling was mooted by the granting of a stay by a motions division of this court pending resolution of the appeal.

3. Appellants' contention that the Landlord and Tenant Branch lacked jurisdiction to try the possessory suit because title was in issue, *see* Super.Ct.L & T R. 5(c), is without merit. The argument seems to be that denial of their right of first refusal gave them some sort of equitable title to the property. This argument properly belongs before the Civil Divi-

sion. It is sufficient to point out that a possory suit can be brought upon the basis of a notice to quit [D.C.Code 1973, § 45–910], and that such suits are to be heard in the Landlord and Tenant Branch. *See* Super.Ct. L & T R. 1. There is no claim that appellants have legal title to the property. As in *George Y. Worthington & Son Management Corp. v. Levy,* D.C.App., 204 A.2d 334 (1964), the tenants are claiming that a contractual right justifies their retention of the premises. There we held that the Landlord and Tenant Branch of the former Court of General Sessions nevertheless could enter a judgment for possession.

## III

Appellants also argue that as their lease expired on August 15, 1975, they then became tenants by sufferance [D.C.Code 1973, § 45–820], and therefore were entitled to a 30-day notice to quit.[4] Id. § 45–904. It is their contention that the notice they received was only to inform them of the end of their term of years, and that they therefore never received the notice required to end the tenancy by sufferance. Appellee responds by arguing that the lease amendment changed the termination date to September 1, that the July 31 notice was served more than 30 days in advance thereof, and that in any event they were not entitled to notice because the lease was for a fixed period of time. *See* D.C.Code 1973, § 45–901.

■ ■ ■ We conclude that the lease ended on August 15. The amendment speaks only of changing the due date of the initial payment, and provides that "All other terms of the above mentioned lease are to remain the same." Parties to leases can change rent payment dates without affecting the length of the term, *Ourisman Chevrolet, Inc. v. Zimmelman*, D.C.Mun. App., 91 A.2d 709 (1952), and that is all the original parties intended to do. Appellants, therefore, were tenants by sufferance during the second half of August (the lease having expired), and were entitled to 30 days' notice.

■ ■ ■ Appellants were given such notice. While the record does not include the actual notice, there is no suggestion that it did not instruct the tenants to vacate the premises by August 31. There was nothing improper in serving it before appellants acquired the status of tenants by sufferance. The notice satisfied the statutory purpose of giving the tenants time to find new premises. Appellants' claim on this point is hypertechnical, especially since appellee could have ousted them immediately, *without any notice*, when the lease expired on August 15.[5] D.C.Code 1973, § 45–901.

*Affirmed.*

4. Appellants continued to pay rent into the autumn of 1975.

5. Appellants also contend that the trial court erred in refusing to grant a trial by jury, despite their failure to file such a demand by the time of their appearance. Super.Ct. L & T R. 6. We need not consider whether the court should have granted an extension

of time "for good cause shown", *id.*, because there were no material facts in issue to submit to a jury. *See Fletcher v. Evening Star Newspaper Co.*, 72 App.D.C. 303, 114 F.2d 582 (1940), *cert. denied*, 312 U.S. 694, 61 S.Ct. 732, 85 L.Ed. 1130 (1941); *Hunt v. Bradshaw*, 251 F.2d 103, 108 (4th Cir. 1958); *Hansen v. Safeway Stores, Inc.*, 238 F.2d 336, 339 (9th Cir. 1958).