Henry B.Y. SHIN, Appellant

v.

**PORTALS CONFEDERATION CORPORATION, et al.,** Appellees.

No. 96–CV–618.

District of Columbia Court of Appeals.

Submitted Sept. 25, 1997.
Decided April 22, 1999.

---

Bernard C. Dietz, Washington, DC, was on the brief for appellant.

Robert E. Greenberg and Glenn W.D. Golding, Washington, DC, were on the brief for appellee.

Before TERRY, STEADMAN, and RUIZ, Associate Judges.

TERRY, Associate Judge:

The trial court dismissed appellant's action for fraudulent misrepresentation and breach of contract on the ground of *res judicata.* On appeal he contends that the court erred in granting appellees' motion to dismiss because *res judicata* does not apply to claims that were previously dismissed without prejudice. Given the particular and somewhat unusual facts of this case, we affirm.

I

This case arises from a retail lease agreement dated July 16, 1992, between appellant, Henry Shin, and appellees, Portals Confederation Corporation and Republic Properties Corporation (collectively "the landlords"). Appellant agreed to lease 580 square feet of retail space in a large office building at 1250 Maryland Avenue, S.W., in which he intended to operate a drycleaning business.[1] The lease provided that it would become effective on "the first date on which at least twenty percent of the rentable area of the Office Space is leased and occupied by tenants" and that the landlords would partially abate the rent until "at least fifty percent of the rentable area of the Office Space is leased and occupied by tenants." On June 7, 1993, the landlords notified Mr. Shin that twenty percent of the building had been leased, and he began to pay the reduced rent. In February 1994 the landlords advised him that they had leased more than fifty percent of the office space, which meant that he was then obliged to pay the full rent, beginning in March 1994. Mr. Shin, however, failed to pay the full rent, continuing instead to pay only the reduced rent, and in January and February 1995 he did not pay any rent at all.

On November 30, 1994, Republic Properties Corporation, the general partner in the partnership which managed the building, filed a complaint against Mr. Shin in the Landlord and Tenant Branch of the Superior Court, seeking payment of the partially unpaid rent and possession of the leased premises. Shin filed an answer to the complaint, along with a counterclaim alleging misrepresentation. After Republic orally moved to strike the counterclaim pursuant to Super. Ct. L & T Rule 5(b),[2] appellant voluntarily withdrew it without prejudice. A bench trial was then held before Judge Henry Kennedy, in which the main issue was the meaning of the phrase "leased and occupied" in the lease agreement. Judge Kennedy found that the lease was fully integrated and that a reasonable person would interpret "leased and occupied" to refer to the time at which the tenants have a legal right to possess the property, not when the property is actually physically occupied.[3] Therefore, on May 24, 1995, Judge Kennedy granted a judgment of possession for Republic and entered a monetary judgment against Mr. Shin in the amount of $26,058.62, representing unpaid rent and related charges.

On December 19, 1995, almost seven months after resolution of the landlord-tenant dispute, Mr. Shin filed the instant action against the landlords, alleging fraudulent misrepresentation and breach of contract[4] and seeking rescission of the lease agreement and money damages. The landlords filed a motion to dismiss on the ground of *res judicata,* and Shin filed an opposition. The

---

1. The named appellees, two corporations, are the general partners in the two limited partnerships which own and manage the building.

2. Super. Ct. L & T Rule 5(b) provides in pertinent part:

   *Counterclaims.* In actions in this Branch for recovery of possession of property in which the basis of recovery is nonpayment of rent ... the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this Branch. This exclusion shall be without prejudice to the prosecution of such claims in other Branches of the Court.

3. One of the principal tenants was a large government agency, which had leased space but had not yet moved any of its personnel into the building.

4. Although Mr. Shin states in his brief that he sued only for fraudulent misrepresentation, the fifth count of his complaint alleged that the landlords had agreed in the lease "to construct certain build-outs" so that he could install a dry cleaning clothes conveyor, and that they had "breached the contract" by failing to do so.

trial court, concluding that Shin's claim arose from the same "common nucleus of facts" as the landlord-tenant proceeding and that appellant could have raised his claim as a defense in that proceeding, granted the motion. Shin then noted this appeal.

## II

▇▇▇ Whether the trial court correctly applied *res judicata* principles to the facts of this case is a legal issue that we decide *de novo*. *See Osei–Kuffnor v. Argana*, 618 A.2d 712, 713 (D.C.1993). Under the doctrine of *res judicata*, or claim preclusion, "a prior judgment on the merits raises an absolute bar to the relitigation of the same cause of action between the original parties or those in privity with them." *Goldkind v. Snider Brothers, Inc.*, 467 A.2d 468, 473 (D.C.1983) (citations omitted). The doctrine bars relitigation "not only as to every ground of recovery *or defense* actually presented in the action, *but also as to every ground which might have been presented* ...." *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195 (1877) (emphasis added); *accord, e.g., Molovinsky v. Monterey Cooperative, Inc.*, 689 A.2d 531, 533 (D.C.1996); *Faulkner v. Government Employees Insurance Co.*, 618 A.2d 181, 183 (D.C.1992); *Goldkind, supra*, 467 A.2d at 473 n. 10.

> A defendant seeking dismissal of a complaint on *res judicata* grounds bears the burden of persuasion on two separate issues. First, he must demonstrate that the prior decision on which he bases his *res judicata* claim was a decision on the merits; second, he must establish that the earlier litigation was based on the same cause of action.

*Amos v. Shelton*, 497 A.2d 1082, 1084 (D.C. 1985) (citations omitted).

▇▇▇ Appellant contends that *res judicata* does not apply to this case because his counterclaim in the landlord-tenant action was dismissed (by him) without prejudice. It is certainly true that "[t]he crucial element of *res judicata* is a final judgment on the merits ... and it is beyond dispute that a dismissal without prejudice does not determine the merits." *Interdonato v. Interdonato*, 521 A.2d 1124, 1131–1132 n. 11 (D.C.1987) (citations omitted). In addition, in *Pipher v. Odell*, 672 A.2d 1092, 1095 (D.C.1996), we held that the plaintiffs' cause of action, which arose out of the same transaction as a crossclaim which they had brought in an earlier proceeding and which had been dismissed without prejudice, was not barred by *res judicata* because "a dismissal of a claim without prejudice does not bar a subsequent suit of issues arising out of the same cause of action." *Id.; see also Thoubboron v. Ford Motor Co.*, 624 A.2d 1210, 1216 (D.C.1993). Therefore, because it was not a final adjudication, Mr. Shin's voluntary dismissal of his earlier counterclaim does not, in itself, bar his present claim.

▇▇▇ But our inquiry does not end there. A dismissal without prejudice does not forever protect a claim from dismissal in a later proceeding on the ground of *res judicata*. If there is subsequent litigation resulting in a decision on the merits, in which a party has the opportunity to litigate an issue and fails to do so, that party may not rely on an earlier dismissal without prejudice to shield his later claim from a *res judicata*-based dismissal. Such a result would violate the principle that a "final judgment embodies all of a party's rights *arising out of the transaction involved*, and a party will be foreclosed from later seeking relief on the basis of issues which might have been raised in the prior action." *Stutsman v. Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.*, 546 A.2d 367, 370 (D.C.1988) (citations omitted; emphasis added).

▇▇▇ In this case, after Mr. Shin voluntarily dismissed his counterclaim, there was a trial in Landlord and Tenant court, in which his present claims could have been litigated as part of his general denial of liability for rent. As challenges to the contract itself rather than equitable claims, they would not have been barred by L & T Rule 5(b), *supra* note 2, which limits the types of equitable defenses and counterclaims that a defendant may assert in a possessory action.[5] Notwith-

---

5. L & T Rule 5(b) provides that a defendant in a    possessory action may "assert an equitable de-

standing Rule 5(b), a defendant always has the right to present any *legal* defense as part of a general denial of liability. *See Barnes v. Scheve,* 633 A.2d 62, 65 (D.C.1993) (*"In addition to a general denial,* the defendant [in a possessory action] is limited to an equitable defense of recoupment or set-off, certain counterclaims for a money judgment, and a plea of title" (footnote omitted; emphasis added)). Even though Shin's allegations of fraudulent misrepresentation and breach of contract may not have been presentable in the form of a counterclaim because of Rule 5(b), he still could have raised them as legal defenses to the landlord's claim for back rent.[6] These allegations are challenges to the lease itself and, if true, would have made the lease void and unenforceable, or at least would have markedly affected the total amount of the money judgment.[7]

Shin contends nevertheless that *res judicata* does not bar his claim because it is not based on the same cause of action as the landlord-tenant proceeding. *See Faulkner, supra,* 618 A.2d at 183; *Smith v. Jenkins,* 562 A.2d 610, 613 (D.C.1989). In determining whether two cases are based on the same cause of action, "the courts have considered the nature of the two actions and the facts sought to be proved in each one." *Amos v. Shelton, supra,* 497 A.2d at 1085 (citation omitted); *see Smith v. Jenkins, supra,* 562 A.2d at 613 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)). We have specifically held that claims for fraudulent misrepresentation arise out of the same cause of action as an earlier proceeding based on the contract. For example, in *Laufer v. West-minster Brokers, Ltd.,* 532 A.2d 130 (D.C. 1987), we held that a claim of fraud arose out of the same cause of action as an earlier breach of contract case in a foreign court. "[B]ecause the issue of Westminster's alleged fraud was one which might have been litigated in the original action ... the [earlier] judgment raises an absolute bar to Laufer's counterclaims based on the same alleged fraud." *Id.* at 136 (citation omitted). Similarly, in *Comer v. Fistere,* 103 A.2d 206 (D.C. 1954), we held that a claim for fraud should have been raised as a compulsory counterclaim in an earlier breach of contract action because "[t]he claim ... attack[ed] the same contract which was the subject matter of [the original] action." *Id.* at 208. *See also Henderson v. Snider Brothers, Inc.,* 439 A.2d 481, 486 (D.C.1981) (en banc) ("the defense of fraud is not an independent claim and cannot be considered as being separate and distinct from the underlying agreement and the obligation sued upon"). In this case, Mr. Shin's claim arose out of the same contract and surrounding negotiations as the landlord-tenant proceeding. We conclude, therefore, that it could and should have been offered as a defense in the landlord-tenant case, and hence that the present action is barred by *res judicata.*

### III

Mr. Shin's other contention, that it would be inequitable to apply *res judicata* to his claim because the damages he now seeks (monetary damages and rescission of the contract) are greater than he could have recov-

---

fense of recoupment or set-off ...." Both recoupment and set-off defenses are really nothing more than requests that the court reduce any award to the plaintiff by any sums owed to the defendant as a result of the tenancy. *See Pernell v. Southall Realty,* 294 A.2d 490, 496 (D.C.1972) (characterizing back rent paid as recoupment and money spent repairing the premises as set-off), *rev'd on other grounds,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974).

6. Shin contended in the landlord-tenant proceeding that the language of the lease excused his non-payment of rent. He could also just as well have argued, but did not, that the lease itself was unenforceable because appellees had engaged in fraudulent misrepresentation and had breached the contract, as he now belatedly alleges.

7. *Winchester Management Corp. v. Staten,* 361 A.2d 187 (D.C.1976), is inapposite here because the tenant-defendants in that case raised an equitable defense of rent set-offs based on alleged housing code violations, rather than a general denial of liability. *See id.* at 189–190 (affirming the set-offs based on lack of hot water but reversing the trial court's finding that an intermittent failure of air conditioning equipment violated the housing code). Our limitation on equitable defenses in *Winchester* would not have precluded Shin from asserting his present claims as a *legal* defense in the landlord-tenant proceeding. Moreover, in *Winchester* the only issue was the landlord's right to possession; no judgment for unpaid rent was sought or entered.

ered in the landlord-tenant adjudication (mitigated damages), is also unpersuasive. This court has held that such a discrepancy in the amount of available damages is not relevant to whether *res judicata* bars a claim. *Osei–Kuffnor v. Argana, supra,* 618 A.2d at 715 ("The fact that the jurisdictional amount of the D.C. Superior Court is greater than the jurisdictional amount of the [Maryland] Court does not demonstrate that the underlying facts and claims in the instant case have not already been adjudicated in the Maryland case" (citations omitted)). In any event, Shin was not precluded from recovering full damages. He could have raised fraud and breach of contract as defenses in the landlord-tenant proceeding, received the available damages, and, if the issues were decided in his favor, brought a subsequent action seeking full damages based on collateral estoppel.

## IV

Because the trial court correctly applied the doctrine of *res judicata* to the facts of this case, its order of dismissal is

*Affirmed.*

RUIZ, Associate Judge, dissenting:

The doctrine of *res judicata* precludes relitigation of a claim that has or could have been litigated in a previous action. *See Jonathan Woodner Co. v. Adams,* 534 A.2d 292, 295 n. 6 (D.C.1987). Thus, as a rule of finality, *res judicata* does not apply if, because of procedural or jurisdictional limitations, the prior forum was not a proper one for the claim. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) (1982).[1] Further, as a

rule intended to prevent multiple and vexatious litigation, *res judicata* is not available to a litigant who has agreed "in terms or in effect," *id.* at § 26(1)(a), that a claim "subsists as a possible basis for a second action," *id.* at § 26(1).[2] In this case, *res judicata* should not be applied for both reasons, as the landlords (defendants-appellees) now seek to preclude Mr. Shin's (plaintiff-appellant's) suit claiming that the landlords fraudulently induced him to enter into the lease and subsequently breached its terms, when at an earlier landlord-tenant proceeding for possession and back rent they properly opposed Mr. Shin's counterclaims based on the same theories of fraud and breach on the ground that Super. Ct. L & T R. 5(b) "limited Shin's ability to assert his claims in the Landlord and Tenant Branch."

Rule 5(b) provides:

In actions in this Branch for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises. No other counterclaims, whether based on personal injury or otherwise, may be filed in this Branch. This exclusion shall be without prejudice to the prosecution of such claims in other Branches of the Court.

There is no doubt that Mr. Shin, who is now suing, *inter alia,* for damages suffered by his dry cleaning business[3] as a result of the landlords' fraud and breach, could not

---

1. RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) and (c) provides:

   Exceptions to the General Rule Concerning Splitting

   (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

   (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

   . . . .

   (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain

remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

2. See note 1, *supra.*

3. The complaint requests that the lease be declared void *ab initio* and damages in the amount of $500,000.

have brought these claims under the limited procedures available in the Landlord–Tenant Branch. "[T]he rules governing the Landlord and Tenant Branch narrowly and specifically limit its reach.... Rule 5 strictly circumscribes the defenses and counterclaims a defendant may assert in the Landlord and Tenant Branch." *Barnes v. Scheve*, 633 A.2d 62, 64–65 (D.C.1993). In defending a landlord-tenant action for possession, a tenant may forestall eviction and defend against the obligation to pay back rent by making a general denial or a plea of title and may "assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment *based on the payment of rent* or on expenditures claimed as credits *against rent* or for equitable relief related to the premises." *Id.* at 65 n. 6 (quoting Super. Ct. L & T R. 5(b)) (emphasis added). Defenses (other than a general denial) are limited to those based on the payment of or credits against rent because the only reason the landlord-tenant court is empowered to determine rent owed is "to allow the tenant to avoid eviction by paying the rent due." *Winchester Management Corp. v. Staten*, 361 A.2d 187, 192 n. 13 (D.C.1976); *see Brown v. Young*, 364 A.2d 1171, 1173 (D.C.1976) (disallowing breach of lease as defense to suit for possession). "[T]he power to assess the amount of rent owed in a summary possessory action does not give rise to an expanded authority simultaneously to adjudicate all conflicting claims between the landlord and tenant." *Winchester Management Corp., supra*, 361 A.2d at 192 n. 13 (citing *Tutt v. Doby*, 148 U .S.App. D.C. 171, 174–75, 459 F.2d 1195, 1198–99

(1972)); *see Campos v. Aguila*, 464 A.2d 132, 133 (D.C.1983) (dismissing tenant's defense unrelated to obligation to pay rent); *Weisman v. Middleton*, 390 A.2d 996, 1001–02 (D.C.1978) (distinguishing between claim of retaliatory eviction, which is a defense to suit for possession, and suit for malicious prosecution in bringing a suit for possession, which is an independent action). Therefore, even if he had prevailed in his defense and avoided the back rent obligation in the amount of $26,000, Mr. Shin could not have recovered in the landlord-tenant action the allegedly greater amount of damages for his loss of business. Thus, the judgment in landlord-tenant court cannot render Mr. Shin's civil complaint *res judicata*. *See Carr v. Rose*, 701 A.2d 1065, 1072 (D.C.1997) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 30(2)).[4]

The landlords do not contest that, at their instance, Mr. Shin withdrew his counterclaims "without prejudice to the prosecution of such claims in other Branches of the Court," Super. Ct. L & T R. 5(b), nor do they argue that the landlord-tenant court considered and adjudicated Mr. Shin's claims of fraud and breach. Indeed, the record makes clear that the only issue before the landlord-tenant court was the interpretation of one phrase in the lease, "leased and occupied by tenants," which determined when the lease's rent abatement provision terminated and Mr. Shin became liable for the full rent the landlords were attempting to collect. The landlords contend, however, that Mr. Shin could have asserted the substance of his claims for fraud and breach as a defense to their suit for possession and back rent, and that, be-

---

4. *Osei–Kuffnor v. Argana*, 618 A.2d 712 (D.C. 1993), is not to the contrary. In *Osei–Kuffnor*, the plaintiff filed a personal injury action in small claims court in Maryland and, after it was decided in favor of the defendant, filed another personal injury action in the District of Columbia arising from the same automobile accident. She argued, however, that *res judicata* should not be applied to bar her District of Columbia lawsuit because it was not subject to the jurisdictional limitation on damages of her earlier small claims action in Maryland. This court disagreed, stating that "[t]he fact that the jurisdictional amount of the D.C. Superior Court is greater than the jurisdictional amount of the Prince Georges County District Court *does not demonstrate that the underlying facts and claims in the instant case have not already been adjudicated* in the Mary-

land case." *Id.* at 715 (emphasis added). Thus, the court appears to have been focussed on collateral estoppel, not claim preclusion. Moreover, in that case the party against whom preclusion was asserted chose the first forum with limited jurisdiction. Here, not only was Mr. Shin a defendant in the landlord-tenant action, but he was induced to drop his counterclaim by the landlords. Finally, in *Osei–Kuffnor*, the plaintiff did not argue that there was any difference between the two lawsuits. *See id.* at 714. Here, Mr. Shin has consistently argued that the only issue before the landlord-tenant court was the interpretation of the lease's rent abatement provision, while the issues in his civil complaint are fraud in the inducement of the lease and breach of its terms.

cause he did not do so, he is now precluded from bringing the present complaint in the civil branch. Not so. Even if Mr. Shin arguably could have defended against the landlord-tenant action with some of the same arguments he makes in his complaint for damages for misrepresentation and breach,[5] that does not mean that the landlord-tenant court could have adjudicated the defense in such a manner that would have established his counterclaim.[6] We have noted that where a portion of a defendant's counterclaim "partially fits, but to some extent exceeds" the scope permitted by Rule 5(b), the landlord-tenant branch does not have jurisdiction and the proper remedy is for the court to dismiss the counterclaim without prejudice or transfer the case to the civil branch. *See Mathis v. Barrett*, 544 A.2d 287, 288–89 (D.C.1988). Here, the landlord-tenant court did not dismiss Mr. Shin's counterclaim without prejudice, nor did it transfer the case to the civil branch. Rather, upon the landlords' motion that the counterclaim

exceeded the permissible scope under Rule 5(b), Mr. Shin voluntarily withdrew his counterclaims for fraud and breach "without prejudice" and the landlord-tenant action proceeded solely on the issue of interpretation of the rent abatement provision. In these circumstances, such voluntary withdrawal, like the "dismissal without prejudice" that the trial court otherwise would have entered, *see id.*, has no preclusive effect. *See Pipher v. Odell*, 672 A.2d 1092, 1094 (D.C.1996) (citing *Thoubboron v. Ford Motor Co.*, 624 A.2d 1210, 1216 (D.C.1993) and *Interdonato v. Interdonato*, 521 A.2d 1124, 1131 n. 11 (D.C. 1987)).[7]

This case is governed by the particular limitations of proceedings in the landlord-tenant branch. It is also worth noting, however, that the rules of preclusion are somewhat different as applied to plaintiffs and defendants. Although language in our cases is far from clear, *res judicata* or claim preclusion is generally applicable to plaintiffs' claims, but not to defenses. In *Stutsman v.*

---

**5.** This is a doubtful proposition. As far as the suit for possession is concerned, fraud and breach are no defense to non-payment of rent. *See Brown, supra*, 364 A.2d at 1173. The majority attempts to distinguish this case from *Winchester Management Corp., supra*, 361 A.2d at 192, on the ground that that case involved an *equitable* defense to possession, but the landlord-tenant action here also included a claim for back rent, to which Mr. Shin could somehow have asserted *legal* defenses so as to have rendered the "lease void and unenforceable, or at least ... markedly affected the total amount of the money judgment." See *ante* at 619. Rule 5(b), however, authorizes the assertion of only "equitable defenses," and the request for "equitable relief," even in a case "in which there is joined a claim for recovery of rent in arrears." Super. Ct. L & T.R. 5(b). Moreover, the majority does not specify how any *legal* defense Mr. Shin could have asserted would defeat the landlords' claim for back rent, and none is apparent. Fraud in the inducement of the lease, for example, even if it were to void the lease, would not necessarily excuse all payment obligations resulting from Mr. Shin's actual tenancy in the premises, and the amount of rent provided for in the lease would be considered in determining the amount of rent due. *See Dameron v. Capitol House Associates. Ltd. Partnership*, 431 A.2d 580, 584 (D.C. 1981). Only breaches of the implied warranty of habitability can give rise to a complete rent set-off. *See Winchester Management Corp., supra*, 361 A.2d at 190. The breaches of the commercial lease alleged by Mr. Shin, breach of particular build-out and signage provisions in the lease,

do not contravene the housing code and thus would not breach the implied warranty of habitability. *See id.* Thus, there was no way Mr. Shin could have prevailed on a "general denial" of a back rent obligation. At most what Mr. Shin could have attempted was to present his argument that the landlords breached the lease, causing him damages. This is not, strictly speaking, a "defense" to the obligation to pay rent. It is a counterclaim which, if successful, would affect the net amount payable as rent (or could even have resulted in a net payment to Mr. Shin). Deciding Mr. Shin's claims would have required the landlord-tenant court to go beyond determining the amount of rent owed, to decide Mr. Shin's contract claims based on the lease. *But see Campos, supra*, 464 A.2d at 133 ("Here, appellant's defense is not based upon the payment of rent and was properly disallowed.").

**6.** Mr. Shin would need to establish not only fraud and breach by the landlords, but also consequential and foreseeable damage to his business.

**7.** The majority's argument that, even after voluntarily withdrawing his counterclaims, Mr. Shin could have asserted their essence as a defense in "subsequent litigation" in the landlord-tenant action, see *ante* at 620, ignores the fact that the landlords' objections to Mr. Shin's counterclaims, his responsive withdrawal of the counterclaims, and the trial, all were part of the *same* landlord-tenant action. There was no "subsequent litigation."

*Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.*, 546 A.2d 367 (D.C. 1988), the court held that once a final judgment had been entered in the plaintiff's favor in his "survival/loss of consortium action, ... [plaintiff's] wrongful death cause of action [based on the same factual nucleus] merged into the final judgment and his separate claim was extinguished." *Id.* at 370. This is because the "rule of merger" extinguishes the *plaintiff's* claim and replaces it with the judgment, precluding a successful plaintiff from seeking other remedies based on the extinguished claim. *See* RESTATEMENT (SECOND) OF JUDGMENTS §§ 17(1),[8] 18[9] & 24.[10]

The "rule of bar" also extinguishes the *plaintiff's* claim and bars a losing plaintiff from a subsequent action on the claim. *See id.* at §§ 17(2), 19[11] & 24. The same rule of bar applies to extinguish a defendant's unsuccessful counterclaim. *See id.* at § 23.[12] Collateral estoppel, not claim preclusion, is applicable with respect to a defendant's defenses. *See id.* at § 17(3), note 8 *supra.* Usually, it is not the rules of *res judicata* that require a defendant to assert a counterclaim on pain of extinguishment; that is the function of court rules on compulsory counterclaims. *See id.* at § 22(2)(a).[13] There is

8. RESTATEMENT (SECOND) OF JUDGMENTS § 17 provides:

Effects of Former Adjudication—General Rules
A valid and final personal judgment is conclusive between the parties, except on appeal or other direct review, to the following extent: (1) If the judgment is in favor of the plaintiff, the claim is extinguished and merged in the judgment and a new claim may arise on the judgment (see § 18); (2) If the judgment is in favor of the defendant, the claim is extinguished and the judgment bars a subsequent action on that claim (see § 19); (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in a subsequent action between them on the same or a different claim, with respect to any issue actually litigated and determined if its determination was essential to that judgment (see § 27).

9. RESTATEMENT (SECOND) OF JUDGMENTS § 18 provides:
Judgment for Plaintiff—the General Rule of Merger
When a valid and final personal judgment is rendered in favor of plaintiff: (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and (2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.

10. RESTATEMENT (SECOND) OF JUDGMENTS § 24 provides:
Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"
(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such consideration as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

11. RESTATEMENT (SECOND) OF JUDGMENTS § 19 provides:

Judgment for Defendant—The General Rule of Bar
A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.

12. RESTATEMENT (SECOND) OF JUDGMENTS § 23 provides:

Judgment for Plaintiff on Defendant's Counterclaim
Where the defendant interposes a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the rules of bar are applicable to the judgment.

13. RESTATEMENT (SECOND) OF JUDGMENTS § 22 provides:

Effect of Failure to Interpose Counterclaim
(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court; or
(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action

an exception, however, for even when a counterclaim is not compulsory, a defendant may lose the claim (or defense) not previously asserted if the prior judgment would be undermined by a subsequent successful action on the same claim (or defense). *See Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 136 (D.C.1987) (precluding counterclaim that could have been raised as defense to an earlier action before English courts because "[t]o allow the defenses ... in the guise of counterclaims would impermissibly 'undercut the validity of the [prior English] judgment ... and permit him to relitigate the case *de novo.*' ") (quoting *Bank of Montreal v. Kough*, 612 F.2d 467, 473 (9th Cir.1980)); *Henderson v. Snider Bros., Inc.*, 439 A.2d 481, 486–87 (D.C.1981) (en banc) (precluding subsequent claim for fraud in the inducement that would invalidate prior foreclosure action, but allowing subsequent claim for misrepresentation and breach of fiduciary duty as a "separate and distinct cause of action, which was not part of the foreclosure proceeding"); *Comer v. Fistere*, 103 A.2d 206, 208 (D.C.1954) (noting that a party failing to file a compulsory counterclaim is barred from filing an independent action on such claim and that *res judicata* barred subsequent action where its success "would necessarily depend upon" contrary determination of point already established in prior litigation); RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b).[14]

Applying these principles to the present case, first, there is no collateral estoppel here as the landlord-tenant court did not consider Mr. Shin's fraud and breach claims. Second, in this case, as we have seen, Mr. Shin's counterclaim not only was not compelled, but was prohibited by Super. Ct. L & T R. 5(b).[15] Third, a judgment for Mr. Shin in the present action for damages for misrepresentation and breach of the lease would not invalidate the judgment in the landlord-tenant action, which was premised on the existence of the lease.[16]

Beyond these doctrinal considerations, application of *res judicata* in this case would not advance the principles underlying the doctrine. "This is not a case in which appellant is trying to get 'a second bite of the apple.' " *Faulkner v. Government Employees Ins. Co.*, 618 A.2d 181, 184 (D.C.1992). As already noted, the landlord-tenant court not only did not but it could not have adjudicated Mr. Shin's counterclaims for fraud and breach. The fact that Mr. Shin failed (perhaps erroneously but inadvertently) to interpose defenses to the landlord-tenant action that may have been available to him means that he lost possession of the property and had a money judgment entered against him—the only relief that the landlord-tenant court could grant; it does not mean, however, that as a claimant, he thereby gave up tort and contract actions which that court could not address.

In the current action, the landlords are not being hounded by multiple and vexatious litigation brought by a party seeking to relitigate his claim. Mr. Shin's claims have never been litigated. The landlords now face the totally anticipated consequences of their motion before the landlord-tenant court to dismiss Mr. Shin's counterclaims.

Lastly, we generally do not countenance arguments made on appeal that are inconsistent with arguments made to the trial court. *See District of Columbia v. Wical Ltd. Partnership*, 630 A.2d 174, 182 (D.C.1993). That rule is usually applied in the context of arguments made in the court of appeals that differ from arguments made before the trial

---

would nullify the initial judgment or would impair rights established in the initial action.

14. See note 13, *supra*.

15. If the landlords' case had been filed in the civil action branch, Mr. Shin's counterclaims would have been compelled by Super. Ct. Civ. R. 13(a).

16. UNDER RESTATEMENT (SECOND) OF JUDGMENTS § 22(b), see note 13, *supra*, it would appear that Mr. Shin's request to declare the lease void *ab*

*initio* would be precluded by the judgment in the landlord-tenant court, which was predicated on the existence of a valid lease. Mr. Shin's claims for damages resulting from the alleged misrepresentation and breach, however, would not be precluded because a judgment for Mr. Shin would not "nullify the initial judgment or ... impair rights established in the initial action." *Id.*

court from which the appeal is taken. In this context it is equally applicable when a contrary argument has been made in a different case by a litigant arguing for claim preclusion on appeal based on such other case. It is the litigant who asserts the other case's preclusive effect that makes the litigant's actions in the other litigation claimed to be preclusive an important part of the *res judicata* inquiry. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a). Moreover, that litigant has the burden of proof. *See id.* § 27, cmt. f. Thus, to the extent that we do not have the record of the landlord-tenant action before us so that we may evaluate whether the landlords agreed "in terms or effect" that Mr. Shin should be able to bring his counterclaims in a subsequent action, *see id.* at § 26(1)(a), note 1 *supra,* that deficiency is to the landlords' detriment. *See Cobb v. Standard Drug Co., Inc.,* 453 A.2d 110, 111 (D.C. 1982).

For these reasons, I respectfully dissent and would reverse and remand the case to allow Mr. Shin to prosecute his claims for damages occasioned to his business by the landlords' misrepresentation and breach of the lease.