**Paul J. DAVIS, Appellant,**

v.

**Clyde BRUNER, Appellee.**

**No. 11924.**

District of Columbia Court of Appeals.

Argued April 6, 1979.

Decided Feb. 11, 1982.

Rehearing En Banc Granted and Opinion Vacated March 29, 1982.

Lynn E. Cunningham, Washington, D. C., for appellant. Laura A. Gisolfi submitted a brief in behalf of appellant.

Michael E. Brand, Washington, D. C., for appellee and as amicus curiae.

Before NEBEKER and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.*

YEAGLEY, Associate Judge, Retired:

This action for possession was instituted when appellee's managing agent [1] filed suit against the tenant (appellant), alleging non-payment of rent for the period September 1, 1976 to October 1, 1976. Five previous actions for possession for nonpayment of rent resulted in judgments for appellee during the period 1971–1975. In the verified complaint, it was alleged that there was a written lease with waiver of written notice to vacate, and that appellant was a monthly tenant. Defendant (appellant) appeared and alleged in his answer, *inter alia,* (a) that he had not received, nor had he knowingly waived his right to receive, a notice to quit; (b) that he did not owe plaintiff the amount alleged in the complaint; (c) that the rental agreement was null and void based upon housing code violations causing the premises to be unsafe and/or unsanitary; (d) that plaintiff had breached the warranty of habitability implied in every rental agreement because of the substantial housing code violations existing on the premises; and (e) that despite the earlier judgments, he was entitled to a money judgment for back rent paid since January 1, 1974, based upon these violations.

In support of his motion for partial summary judgment, appellee urged that the prior default judgments entered against appellant for possession [2] constituted an adjudication of the existence of the lease and the condition of the premises prior to September 29, 1975, the date of the last judgment, rendering those issues res judicata and precluding as defenses the validity of the lease, whether there had been a written notice to quit, and a counterclaim for housing code violations for the periods encompassed by the judgments.[3] The motion was granted pre-trial over appellant's opposition.

After both parties rested at trial, appellee moved for a directed verdict on appellant's counterclaim for the period from September

---

* Judge Yeagley was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on April 20, 1979.

1. The owner of the premises, Clyde Bruner, was substituted as appellee in place of the managing agent, Roger Washburn.

2. The court denied appellant's oral motion to vacate the prior default judgments under Super.Ct.Civ.R. 60(b), pursuant to Super.Ct.Civ.R. 55(c). The motion was not in writing. *See* Super.Ct. L & T R. 13(a).

3. In appellant's affidavit filed in response to the motion for partial summary judgment he stated, among other things, that he recalled receiving several summonses but decided to pay the rent rather than go to court. He also averred that he never had a written lease.

30, 1975 through August 31, 1976, on the ground that there was insufficient evidence to go to the jury. The court granted the motion and instructed the jury that they could only consider evidence of housing code violations for the periods for which rent was claimed owing, to wit, September 1, 1976 to date of trial, February 1977.[4] The jury found housing code violations existed during this period and abated the amount of rent found due ($600) by fifty percent. Judgment for possession was entered for appellee,[5] and this appeal followed.[6] We affirm.

Appellant's twofold argument on appeal is basically that it was error for the court to grant the motion for partial summary judgment, which precluded his counterclaim for housing code violations existing prior to September 29, 1975, the date of the last default judgment.[7]

Appellant-tenant contends preliminarily that even if the prior default judgments were valid, D.C.Code 1973, § 16–1505 bars the application of the doctrine of res judicata to judgments for possession of real estate. That section of the code provides that:

> A judgment of the Superior Court of the District of Columbia in a proceeding pursuant to this chapter is not a bar to any afteraction brought by either party, and does not conclude any question of title between them, where title is not pleaded by the defendant.[8]

■ Appellant, focusing on the language "A judgment of the Superior Court of the District of Columbia in a proceeding pursuant to this chapter is not a bar to any afteraction brought by either party," would have us hold that a judgment for possession obtained by default is not res judicata in a subsequent action, even if the second suit is on the same cause of action and between the same parties. This result would be contrary to the general rule that default judgments are as conclusive as judgments rendered after trial. *Woods v. Cannaday*, 81 U.S.App.D.C. 281, 158 F.2d 184 (1946); *Somportex Limited v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 442 (3d Cir. 1971), cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). See also ALI Restatement of the Law of Judgments, § 75 (1942).

■ We must reject appellant's effort to bring D.C.Code 1973, § 16–1505 to bear here. The statute must be read as a whole and when so read only eliminates the bar of res judicata in summary actions for possession of real estate as to the issue of title, unless title is pleaded by the defendant.

In a decision in this jurisdiction involving a statutory summary action for possession, such as we have here under D.C.Code 1973, § 16–1501–03, we said that

> an action under § 16–1501 normally does not try title. When the issue of title intrudes into the action, it is discontinued and, pursuant to a rule of the Superior Court, transferred from the Landlord and Tenant Branch to the Civil Division "for

---

4. Appellant had remained in possession up to and during trial.

5. We do not have before us the question of whether a judgment for possession is appropriate if the deficiency consists only of court costs and not of rent, which situation was not established here. Any such attack on the prior judgments would, of course, be of a collateral nature.

6. On May 26, 1978, this court ordered that: "[i]nsofar as appellant has accepted benefits under the judgment entered February 9, 1977, for the period September 1, 1976 through February 28, 1977, appellant is estopped from prosecuting an appeal from any ruling of the trial court that would affect the validity of the February 9, 1977 judgment."

7. Appellant also contends that the prior default judgments were invalid; that the court erred in refusing to vacate the prior default judgments; that the court erred in ruling that the plaintiff did not have to introduce evidence of a written lease agreement, including a waiver of defendant's right to receive a notice to quit in order to make out a prima facie case for possession; and that the court erred in directing a verdict against defendant on his counterclaim. We find these claims to be without merit.

8. Complaints for possession are within the coverage of this chapter. D.C.Code 1973, § 16–1501–03.

trial on an expedited basis." Appellant argues that the change of forum incident to a plea of the title does not change the nature of the proceedings, and we would agree. Nevertheless, actions in which title is in issue constitute a special category under the statute.[9]

[9] No question of title is concluded between the parties in an action under § 16–1501, where title is not pleaded by the defendant. D.C.Code 1967, § 16–1505 (Supp. V, (1972). [*Pernell v. Southall Realty*, 294 A.2d 490, 492 (1972), *rev'd on other grounds*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974) (n.8 omitted).]

When this summary remedy for possession of real estate was adopted by Congress, we already had a statutory remedy for possession which authorized an action in ejectment wherein, historically, the question of title was in issue. *Bursey v. Lyon*, 30 App. D.C. 597, 604–05 (1908); *Pernell v. Southall Realty*, D.C.App., 294 A.2d 490, 492 (1972); D.C.Code 1973, § 45–910. Accordingly, our Code also specifically provides:

> A final judgment rendered in an action of ejectment is conclusive as to the title thereby established as between the parties to the action and all persons claiming under them since the commencement of the action. [D.C.Code 1973, § 16–1115.]

When the new summary remedy for possession was adopted, the Congress apparently wanted to make it clear that if the action brought did not sound in ejectment, the final judgment would not determine title or be conclusive between the parties as to title unless pleaded by the defendant.

■ The action before us is for summary possession under D.C.Code 1973, § 16–1501, and defendant-appellant did not put title in issue. Consequently, D.C.Code 1973, § 16–1505 has no application here, other than that the judgment, unlike one in ejectment, will not be conclusive as to any question of title. It means nothing more.

■ Appellant argues secondly that because the defenses and/or counterclaims regarding the validity of the lease, waiver of notice, and housing code violations, were not raised in the prior actions, and the judgments were entered by default, those issues were not litigated and determined in the prior actions, even though he could have raised the violations as an affirmative defense. *See McNeal v. Habib*, D.C.App., 346 A.2d 508 (1975); *Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). Consequently, reasons appellant, the bar of res judicata was misapplied by the trial court to this counterclaim for housing violations existing prior to the earlier judgments for possession.

We disagree and reaffirm our holding in *Gordan v. William J. Davis, Inc.*, D.C.App., 270 A.2d 138 (1970), which controls appellant's claim here.

In that action for possession, appellant (defendant) contended that the lease agreement was null and void due to housing code violations existing on the premises from the inception of the lease. He sought a setoff at least equal to the rent alleged to be due. In the landlord's motion for a summary judgment, he argued that two prior default judgments involving the same premises and the same parties rendered the issue of the invalidity of the lease due to housing code violations res judicata. The motion was granted. In reviewing appellant's assignments of error, we said:

> We have recently held that a prior default judgment in a suit for possession "is res judicata as to those issues litigated and determined therein * * *. Included litigated issues are the validity of the lease, the existence of the tenancy and the fact that rent is due." *Tutt v. Doby*, D.C.App., 265 A.2d 304, 305 (1970). Appellant would have us now hold to the contrary and disregard the prior default judgments notwithstanding that after the default judgments were entered appellant in both instances paid the back rent due and, so far as it appears, did not seek to have the default judgments vacated under G.S.Civ.R. 60(b).

What appellant seeks is to be free to attack the validity of the lease under our decision in *Brown v. Southall Realty Co.*,

D.C.App., 237 A.2d 834 (1968), due to alleged violations of the Housing Regulations of this city existing on the premises at the inception of the lease. But we could hardly entertain seriously appellant's proposition that we should carve out an area in Landlord and Tenant law and decline to apply there the doctrine of res judicata where there has been a default judgment in the Landlord and Tenant Branch of the trial court. To state the proposal is to answer it. Appellant is bound by the prior judgments and is not free to attack the lease at its incipiency due to alleged violations of Housing Regulations then existing. *Tutt v. Doby*, supra. . . .

\*    \*    \*    \*    \*    \*

It is apparent, therefore, that though appellant is foreclosed from litigating alleged violations existing prior to the last default judgment entered against him in the possessory action this is not the case in respect to violations alleged to have existed in the subsequent period for which rent is claimed. [*Id.* at 139–40; footnotes omitted.]

Appellant contends that *Gordan, supra,* is inapplicable because unlike the tenant there, who paid the judgments after they were entered, he had paid the rent due prior to, or on, the same day the default judgments were entered.[9] Whether or not this argument of appellant is correct seems to be of little consequence. By paying the rent due, whether before or after judgment, he thereby gave recognition to the validity of appellee's claim. Further, in the earlier actions for possession, appellee was required to prove existence of the lease and either a written notice to quit or a waiver. D.C. Code 1973, § 45–901–05.

Appellant argues that appellee did not establish the grounds upon which possession was sought in the two prior cases encompassed within the period of defendant's counterclaim, and that appellee relied upon three 1971 judgments, which preceded the periods encompassed by defendant's counterclaim, to establish the existence and terms of a written lease agreement. We find these claims are without merit. The record shows that appellee relied at least upon judgments for possession entered in 1974 and 1975.[10] We said in *David v. Nemerofsky,* D.C.Mun.App., 41 A.2d 838, 841 (1945):

> [I]t is manifest that in the prior suit the defendant here was afforded the opportunity of controverting the allegation that he was a tenant of the property and he either did controvert it unsuccessfully or permit it to remain unchallenged. Due regard for the policy of the law to end litigation after an issue has been finally determined and to maintain stability and consistency in its decisions should prevent any attempt to litigate anew an issue once decided.

In relying on our decision in *Gordan, supra,* we are not unmindful that the opinion in that case was based largely on our decision in *Tutt v. Doby*, D.C.App., 265 A.2d 304 (1970), which later was reversed by the United States Court of Appeals for the District of Columbia Circuit. 148 U.S.App. D.C. 171, 459 F.2d 1195 (1972).

In *Tutt,* a default judgment for possession of leased premises had been entered against the tenant for nonpayment of rent. The complainant had been served by posting a notice on the front door of the premises. In a later suit by the landlord to recover rent arrearages, but not possession, which differs somewhat from our situation here, we held that the tenant is barred by res judicata from raising the defense that the lease had been breached earlier by the landlord and was null and void.

The basic proposition in *Tutt* was first expressed by this court in *David v. Nemerofsky, supra,* and later followed in *Bess v. David,* D.C.Mun.App., 140 A.2d 316 (1958).

---

**9.** Although it is possible that this assertion is true, we do not find it to be established in the record.

**10.** At the pretrial hearing, counsel for appellant argued that the default judgments were for costs and not for rent.

■ Although we do not have the question here of the amount of rent due as in *Tutt*, we must examine the precedential status of the decision there in light of the later reversal by the United States Circuit Court.

*Gordan v. William J. Davis, Inc., supra*, was decided by this court on October 21, 1970, and as we have indicated, it relied to a considerable extent on *Tutt v. Doby, supra*, decided by this court on May 5, 1970. A timely appeal was taken in the latter case to the Circuit Court prior to the effective date of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No.91–358, D.C.Code 1973, § 11–101 *et seq.* However, the Circuit's decision was not forthcoming until March 1972, nearly a year after the effective date of that Act.

At the time the appeal in *Tutt* was taken, the United States Court of Appeals for the District of Columbia Circuit was the highest court in the District of Columbia. However, before its decision was handed down in March 1972, this court had become the highest court in the District by virtue of the Congress enacting the District of Columbia Court Reform and Criminal Procedure Act of 1970, *supra*, which became effective February 1, 1971. That law provided:

> The highest court of the District of Columbia is the District of Columbia Court of Appeals. Final judgments and decrees of the District of Columbia Court of Appeals are reviewable by the Supreme Court of the United States in accordance with section 1257 of title 28, United States Code. [D.C.Code 1973, § 11–102.]

As to the role of the United States Circuit Court in local matters, that law provided:

> In addition to its jurisdiction as a United States court of appeals and any other jurisdiction conferred on it by law, the United States Court of Appeals for the District of Columbia Circuit has jurisdiction of appeals from judgments of the District of Columbia Court of Appeals—

*       *       *       *       *       *

> (2) entered before the effective date of the District of Columbia Court Reorganization Act of 1970 in any other case if a petition for the allowance of an appeal from the judgment is filed within ten days after its entry. [D.C. Code 1973, § 11–301.]

That act thereby eliminated the power of the United States Circuit Court to review judgments of this court after February 1, 1971. However, since the appeal in *Tutt v. Doby, supra*, was taken prior to February 1, 1971, we conclude that the Circuit Court had jurisdiction to decide that case. The question remains as to its precedential effect.

In *M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971), we addressed the impact of the Court Reform Act on decisions of the federal Court of Appeals for the District of Columbia rendered after February 1, 1971. We there held that

> [W]e are not bound by the decisions of the United States Court of Appeals rendered after [February 1, 1971]. With respect to decisions of the United States Court of Appeals rendered prior to February 1, 1971, we recognize that they, like the decisions of this court, constitute the case law of the District of Columbia. [*Id.* at 312.]

Although the decision of the Circuit in *Tutt v. Doby, supra*, is binding on the parties to that litigation, we conclude that under the principles enunciated in *M.A.P. v. Ryan, supra*, the Circuit's decision in *Tutt* has no binding effect on subsequent decisions of this court. To ascribe a binding negativating authority to the *Tutt* decision beyond the parties to that litigation would be inconsistent with the spirit and letter of the Court Reorganization Act and the principles enunciated in *M.A.P. v. Ryan* and its progeny. *Cf. Bethea v. United States*, D.C. App., 365 A.2d 64, 70 (1976). Consequently, *Gordan v. William J. Davis, Inc., supra*, remains the controlling case in this jurisdiction for the proposition that default judgments entered against a tenant for possession are res judicata in a subsequent pro-

ceeding for possession between the same parties, and we so hold here.[11]

One year after our decisions in *Tutt* and *Gordan*, but before *Tutt* was reversed by the Circuit Court, we reiterated that "... an action for possession decided in favor of the landlord determines finally as between the parties that (1) there is a tenancy between the parties, (2) the lease between the parties is valid and (3) rent is due and owing by the tenant." *Atkins v. United States*, 283 A.2d 204, 205 n.2 (1971), *citing with approval Tutt v. Doby, supra; Brown v. Southall Realty, supra.*

The appellant here had every opportunity in the prior suits for possession of controverting the claim that he was a tenant of the particular premises, that the lease was valid, and to offset the amount of rent then due to the extent there were existing housing code violations. *Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 380, 428 F.2d 1071, 1082 (1970). However, he chose to pay the rent due, permit the tenancy to remain unchallenged, and not to present evidence of housing code violations. If the full amount of the monthly rent was not owing, he should have raised the issue in the prior cases.

We have held often enough not to require repetition that "[R]es judicata applies not only to points on which the court was actually required to pronounce judgment, but, as well, to every point which properly belonged to the subject of the controversy and which the parties, in the exercise of reasonable diligence, might have brought forward at the time." *Woods v. Cannaday, supra*, quoted with approval in *V.E.M. Hotel Service, Inc. v. Uline, Inc.*, D.C.App., 190 A.2d 812, 813 (1963).

If the claim raised by Davis now as to the prior years had been fully established in the earlier actions, it would have abated the rent alleged to be due and defeated the landlord's right to possession. However, the tenant failed to raise the issue then, as he could have, for housing code violations are directly related to whatever rent is due for the particular period in issue. *Javins v. First National Realty Corp., supra.*

■ We see no reason in logic or in the law to permit a tenant, who has suffered one or more defaults for nonpayment of rent, to belatedly raise in a subsequent action for possession, issues of old housing code violations that he failed to raise in earlier actions when the evidence, if any, was fresh.

In *Bess v. David, supra*, and in *David v. Nemerofsky, supra*, we quoted with approval the following language from *McCotter v. Flinn*, 30 Misc.Rep. 119; 61 N.Y.S. 786, 787 (1899):

> A judgment taken by default in summary proceedings by a landlord for nonpayment of rent is conclusive between the parties as to the existence and validity of the lease, the occupation by the tenant, *and that rent is due*, and also as to any other facts alleged in the petition or affidavit which are required to be alleged as a basis of the proceedings. [Emphasis supplied.]

In this day of voluminous litigation and delays in proceedings in court, particularly in areas such as the Landlord and Tenant Branch of the Superior Court, where the annual caseload is well over 100,000, it is essential that we abide by the long-standing policy of the law to avoid repetitive litigation and to reject attempts to litigate anew, issues once decided. Accordingly, the judgment is

*Affirmed.*

FERREN, Associate Judge, concurring in the judgment:

I concur in the judgment only because this division of the court is bound by our

---

11. In reference to the discussion of estoppel in Judge Ferren's concurring opinion based on the Circuit opinion in *Tutt v. Doby, supra*, we note the distinction there that while the first action was for possession, the court correctly pointed out that the second suit was for the amount of rent due which, being a different cause of action, would not invoke res judicata, but collateral estoppel, and therefore only as to the issues actually litigated. The court noted that in the action for possession the amount of rent due remained undetermined, for it was not genuinely before the court, which needed to determine only that some rent was due in order to render a judgment for possession. The Circuit was confronted with an entirely different situation than we have here.

decision in *Gordan v. William J. Davis, Inc.*, D.C.App., 270 A.2d 138 (1970),[1] which is premised on *Tutt v. Doby*, D.C.App., 265 A.2d 304 (1970)—a decision reversed in a persuasive opinion by Judge Leventhal in *Tutt v. Doby*, 148 U.S.App.D.C. 171, 459 F.2d 1195 (1972).

Judge Leventhal explained why a default judgment in a summary possession action in the Landlord and Tenant Branch should not have a collateral estoppel[2] effect on the amount of rent due in a later suit for nonpayment of rent. *See id.* at 173–76, 459 F.2d at 1197–1200. Similarly, a default judgment in a summary possession action should not bar a tenant from alleging a setoff or counterclaim, based on housing code violations, in a later suit for possession based on alleged nonpayment. As my colleagues concede, *see ante* at 998 n.11, the first action did not determine the amount of rent due[3] (an amount subject to setoff for code violations); thus, any subsequent action for possession, based on alleged nonpayment of rent, is vulnerable to any previously unasserted code violation claims not barred by the statute of limitations. To hold otherwise improperly makes compulsory, in the first action, what is clearly a permissive counterclaim. *See* Super.Ct. L & T R. 5(b); *Pernall v. Southall Realty*, D.C.App., 294 A.2d 490, 498 (1972), *rev'd on other grounds*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974).

Recently, moreover, a division of this court in effect rejected *Gordan, supra*, by reaffirming the view that a possessory action only determines the right to possession, not the amount of rent due, and thus should not bar a subsequent action concerning conditions. In *Mahdi v. Poretsky Management, Inc.*, D.C.App., 433 A.2d 1085, 1089–90 (1981) (per curiam), the court held that the striking of pleadings and entry of judgment for possession in favor of the landlord would not bar a subsequent action brought by a tenant to recover damages for breach of the warranty of habitability. *See Hsu v. Thomas*, D.C.App., 387 A.2d 588 (1978) (per curiam) (tenant entitled to sue landlord for amount paid in excess of the reasonable rental value of the leased premises).

My colleagues argue that appellant's payment of arrearages was, in effect, an admission that he had no setoff against the rent thus paid. I disagree. The fact of default does not mean that the tenant "either intends to acquiesce in the allegation of rent due, or has reason to foresee" the conclusive effect of issues not specifically litigated. *Tutt, supra*, 148 U.S.App.D.C. at 176, 459 F.2d at 1200. I would argue, similarly, that a court should not read into payment of arrearages after default, as the only way to retain one's housing, a conscious waiver of a setoff or counterclaim not previously litigated.[4] Implying such a waiver is particularly inappropriate because this jurisdiction

1. In *Gordan, supra* at 140, this court held: "appellant is foreclosed from litigating alleged violations [of housing regulations] existing prior to the last default judgment entered against him in the possessory action...."

2. In *Tutt, supra*, 148 U.S.App.D.C. at 173, 459 F.2d at 1197, Judge Leventhal corrected this court's invocation of res judicata. *See Tutt, supra*, 265 A.2d at 305. The distinction between res judicata and collateral estoppel should be vital to this case. Under the doctrine of collateral estoppel, the decision in a prior case acts as a bar only as to issues "actually litigated and determined in the first action." *Tutt v. Doby*, 148 U.S.App.D.C. 171, 175, 459 F.2d 7, 11 (1972) (quoting Restatement of Judgments § 68(2)). According to Professor Moore, "probably the preponderant view" and the better view is that "a default judgment has no collateral estoppel effect. To invoke the doctrine of collateral estoppel in default cases is not only an oppressive application of the doctrine, but it misconceives the nature of a default judgment." 1B J. Moore, Federal Practice, ¶ 0.444 at 4006 (2d ed. 1980) (footnotes omitted). *See id.* (1981 Supp. at 217) (noting the "excellent discussion of this aspect of the question by Judge Leventhal in *Tutt v. Doby*"); Restatement of Judgments § 68, Comment f, at 302–03 (1942) (default judgment should have no collateral estoppel effect); *In re Garland*, 401 F.Supp. 608, 610 n.3 (E.D.Pa.1975) (citing *Tutt* and Moore's for better practice of giving no collateral estoppel effect to default judgment). *But see* Annot., 77 A.L.R.2d 1410, 1423–25 (1961) (most courts have rejected the Restatement approach and given collateral estoppel effect to default judgments).

3. *See Winchester Management Co. v. Staten*, D.C.App., 361 A.2d 187, 192 n.13 (1976); *George Worthington & Son Management Corp. v. Levy*, D.C.App., 204 A.2d 334, 336 (1964); *Trans-Lux Radio City Corporation v. Service Parking Corporation*, D.C.Mun.App., 54 A.2d 144, 148 (1947); *Shipley v. Major*, D.C.Mun.App., 44 A.2d 540, 541 (1945).

4. In this connection, it is important to note that in the Landlord and Tenant Branch of Superior Court, 99% of the actions have at least one party who is not represented by counsel—almost always the tenant. *See* Ferren, *Courts, Lawyers, and the Organized Bar: A Joint Pro Bono Responsibility*, State Ct.J., Summer 1981, at 4, 37.

has established conflicting precedent concerning the res judicata effect of judgments for possession. *Compare Gordan, supra with Mahdi, supra.*

Before NEWMAN, Chief Judge, KELLY, KERN, NEBEKER, MACK, FERREN, PRYOR, and BELSON, Associate Judges, and YEAGLEY, Associate Judge, Retired.

PER CURIAM.

### ORDER

On consideration of appellant's petition for rehearing en banc pursuant to D.C.C.A. Rule 40, and it appearing that the majority of the judges of this Court has voted to grant the aforesaid petition, it is

ORDERED that appellant's petition for rehearing en banc is granted and that this Court's February 11, 1982, opinions and judgment are hereby vacated. The Clerk of the Superior Court is directed to return to this Court the mandate issued on March 5, 1982. It is

FURTHER ORDERED that the Clerk cause this case to be scheduled for argument before the en banc court as promptly as the business of the Court permits. The parties are hereby directed to file ten additional copies of the briefs heretofore filed with the Clerk on or before Thursday, April 15, 1982.