# District of Columbia
# Court of Appeals

**No. 15-CV-954**

DIONNE SMITH,

Appellant,



FILED

DEC 29 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

**LTB-2205-15**

v.

GREENWAY APARTMENTS LPT/A MEADOW GREEN COURTS,
Appellee.

On Appeal from the Superior Court of the District of Columbia<br>Civil Division

BEFORE: BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*; and REID, *Senior Judge.*

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's judgment is vacated, and the case is remanded for further proceedings to determine whether appellant is entitled to rent abatement on her counterclaim in the months of 2012 and 2013 that are not covered by the specific months involved in appellee's 2012 and 2013 possessory action judgments.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: December 29, 2016.

Opinion by Senior Judge Inez Smith Reid.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-954

DIONNE SMITH, APPELLANT,

FILED  **12/29/16**
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

v.

GREENWAY APARTMENTS LP T/A MEADOW GREEN COURTS, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(LTB-2205-15)

(Hon. Robert Okun, Trial Judge)

(Argued May 10, 2016                                        Decided December 29, 2016)

*Beth Mellen Harrison*, Legal Aid Society of the District of Columbia, with whom *Jonathan H. Levy*, Legal Aid Society of the District of Columbia, was on the brief, for appellant.

*William P. Cannon, III*, with whom *John B. Raftery* and *Offit Kurman* were on the brief, for appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*:  This case involves a January 25, 2015, complaint for possession of real property due to non-payment of one month's rent in January 2015, filed by appellee, Greenway Apartments LP t/a Meadow Green Courts

("Greenway"), and a counterclaim, lodged by appellant Dionne Smith, claiming housing code violations dating back to February 27, 2012, that entitled her to a rent abatement. Prior to trial, the trial court issued an order, dated July 14, 2015, limiting Ms. Smith's counterclaim under the doctrine of *res judicata* (claim preclusion) to the period beginning on January 11, 2014, because of two prior cases involving complaints for possession filed by Greenway based upon Ms. Smith's non-payment of rent during two months in 2012 and two months in 2013. Ms. Smith did not file counterclaims in those actions.

After a bench trial in the current case, the trial court concluded that due to serious housing code violations at her residence, Ms. Smith was entitled to fifty percent abatement of her rent dating from January 11, 2014, to the time of the court's decision. The court entered judgment for Ms. Smith in the amount of $3,775.50.

On appeal, Ms. Smith contends that the trial court erred by concluding that her counterclaim was compulsory and should have been filed in Greenway's prior actions against her. She argues that under Rule 5 (b) of the Superior Court Rules of Procedure for the Landlord and Tenant Branch ("L&T Branch"), counterclaims are permissive, not mandatory; hence, she maintains that the trial court erred by limiting

her counterclaim to housing code violations beginning on January 11, 2014. For the reasons stated below, we hold that counterclaims under Rule 5 (b) of the L&T Branch are permissive and that *res judicata* did not bar Ms. Smith's counterclaim relating to part of the years 2012 and 2013. Consequently, we vacate the trial court's judgment restricting the counterclaim, and remand this case for a determination of housing code violations in 2012 and 2013, and as necessary, a recalculation of the amount of the rent abatement and the judgment to be awarded to Ms. Smith.

## FACTUAL SUMMARY

Testimony presented by Ms. Smith at the trial on her counterclaim and Greenway's complaint revealed that she moved into an apartment building located in the 3500 block of A Street, in the Southeast quadrant in the District of Columbia, sometime in 2011. Her children, ages ten and seven at the time of trial, lived with her. She paid her December 2014 rent in January 2015, and her January and February 2015 rent in January and February, respectively. Beginning in March 2015, she did not pay rent because of what she described as "inhumane" conditions. Mold was present "on and off from 2012" throughout the apartment – the children's

bedroom, Ms. Smith's bedroom, the closets, the hallways, the windowsills, the walls, the ceilings, on clothes in the closets – and there was water damage in the apartment. Ms. Smith took pictures depicting the mold that were admitted into evidence.

About two months after moving into the apartment, Ms. Smith "noticed . . . black stuff." She informed Greenway's manager but nothing was done until the 2012 court complaint for non-payment of rent. Since January 2014,[1] management has "painted over top of [the mold,] and put . . . compound over [it] to cover it up." In 2015, after an inspector for the District inspected the apartment, Greenway "scraped" wherever the mold appeared and put compound over it. Mold continued to grow around the windowsills. Ms. Smith's apartment was plagued by moisture, leaks, and a flood. The apartment and clothes in the closet smelled because of the mold, moisture, and flooding that saturated the carpet. Clothes in the closets had "green stuff growing" on them. Furniture was damaged.

---

[1] The trial court ruled that Ms. Smith was barred from testifying about conditions in her apartment before January 11, 2014.

In addition to the mold, the apartment was infested with spiders, millipedes, insects, and mice. Greenway engaged an exterminator who gave Ms. Smith some "mouse pellets" to put behind the stove and the refrigerator, but that did not eliminate the problem. Ms. Smith has been bitten "several times" by spiders, some of which were "gigantic."

Because of the mold and infestation Ms. Smith and her children sleep in the living room – she sleeps on the couch with her younger son and the older son sleeps on the love seat. Ms. Smith suffers from constant coughing and wheezing due to the infestation. Family members refuse to come to her apartment. Ms. Smith cannot entertain guests or work part-time at home. Food preparation is difficult because of the vermin.

The presence of mold in Ms. Smith's apartment was confirmed by Gift Oboite, a public health technician employed by the District's Department of the Environment. Under the Healthy Housing Program, Ms. Oboite conducts assessments of homes to determine the presence of hazards. Her inspection of Ms. Smith's apartment on October 8, 2014, took place after a referral from Children's Hospital, where one of Ms. Smith's sons was treated for asthma. Ms. Oboite

reported finding chipping and peeling paint and water stains in the hallway; "water stains, an active leak, and mold and mildew in the master bedroom" – and water stains on the ceiling in the storage closet as well as moisture on the window; mold, mildew, and moisture on the window and windowsill in the dining room; "mold or mildew on the bottom of a window and water stains on the wall" of the kitchen; "bubbling and chipping paint and mold and mildew on the wall around a window" in the children's bedroom; and "mold or mildew covered with paint on a window pane" in the bathroom. Moisture was the "most likely" cause of the mold and mildew. Ms. Oboite recommended immediate correction of the conditions because "mold and mildew [are] known to cause health effects, especially respiratory reactions."

Ms. Oboite again inspected Ms. Smith's apartment on November 5, 2014. She discovered that the conditions in the apartment were "worse." For example, the October 8, 2014, inspection "showed paint with mold and mildew growing out of it" with what appeared to be an extra layer of paint, and the November 5, 2014, inspection "showed mold and mildew growing through the paint." Ms. Oboite had not seen mold or mildew on a chair during her October 8 inspection, but during the November 5 inspection, the chair "appeared to have a growth of mold . . . and the ceiling . . . had new spots of bubbling paint." Ms. Oboite did not believe that

Greenway had remediated the conditions in the apartment. Ms. Oboite visited the apartment again in February 2015 and did not see the mold, mildew, and dampness. Ms. Smith asserted that Ms. Oboite "didn't really examine the apartment" in 2015; rather, "she asked questions and then she left."

Rebecca Gallahue, a legal assistant for the Legal Aid Society's housing unit, inspected Ms. Smith's apartment on April 7, 2015. She took pictures of the apartment showing mold growth on a chest and a pillow, mold growing in a closet and on a wall and a windowsill; rodent droppings, cracking and peeling paint in the bedroom; mold growing on a blanket on a mattress in another bedroom, as well as cracking and bubbling paint on the ceiling; mold growing on the windowsill in the bathroom, peeling paint, what appears to be mold growing on faucet knobs, and a black substance around the caulking; peeling and bubbling paint and what appears to be mold growing on a windowsill in the dining area; dark specks or dots along the top of the front door that appear to be mold or mildew growth and peeling paint on the doorframe; dark spots on the doorframe of the master bedroom; peeling paint on the door leading to the linen closet; and rodent droppings in the kitchen.

Greenway countered Ms. Smith's evidence with the testimony of Jennifer Harold, senior property manager of Ms. Smith's apartment building, who disputed Ms. Smith's testimony about a double payment of rent in January for December 2014 and January 2015, and who confirmed that Ms. Smith had not paid rent since February 2015. Ms. Harold also recounted the difficulty management had with accessing Ms. Smith's apartment. Two other witnesses testified about the need to relocate Ms. Smith to another unit, and the difficulties Greenway has encountered in its efforts to relocate Ms. Smith. Ms. Smith testified as a rebuttal witness, refuting Greenway's witness testimony.

At the conclusion of the bench trial, the trial court confirmed its *res judicata* ruling, concluded that Ms. Smith had proved housing code violations in her apartment since January 11, 2014, ordered Greenway to remediate the apartment and address the mold issues, and awarded a monetary judgment to Ms. Smith on her counterclaim.

### *The Trial Court's Res Judicata Ruling*

The trial court concluded that Ms. Smith "is not precluded from asserting [her] counterclaim [back to February 2012] under the doctrine of collateral estoppel, because this issue [was] not actually litigated and decided in the prior proceedings."[2] The trial court also determined that Ms. Smith was not "precluded from raising the issue by the terms of the consent judg[]ment or by the judg[]ment of confession, because both of those judg[]ments are silent on the issue." The trial court was "not persuaded" by Ms. Smith's distinction between permissive and mandatory counterclaims and her assertion that because her counterclaim is permissive she did not have to raise it in Greenway's prior actions against her. The trial court declared that this court "has not distinguished between permissive counterclaims and mandatory counterclaims in setting forth th[e] doctrine" of *res judicata*. Accordingly, the trial court "f[oun]d that [Ms. Smith] is precluded by the doctrine of *res judicata* from asserting a counterclaim based on housing code violations that she

---

[2]

> Collateral estoppel bars relitigation of an issue of fact or law when (1) the issue is actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; and (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Walker v. FedEx Office & Print Servs., Inc.*, 123 A.3d 160, 164 (D.C. 2015) (internal quotation marks and citation omitted).

could have raised and failed to raise at the time she entered into a consent judg[]ment in February 2013, or at the time the judg[]ment by confession was entered against her in January 2014."[3] However, the trial court concluded that "*res judicata* does not bar [Ms. Smith] from asserting a counterclaim based on housing code violations that occurred after the two judg[]ments at issue in this case." Thus, the counterclaim could proceed from January 11, 2014.

In reaching its findings about *res judicata*, the trial court relied on *Davis v. Bruner*, 441 A.2d 992 (D.C.), *vacated per curiam*, *id*. at 1000 (1982), *judgment aff'd by an equally divided court*, 470 A.2d 1248 (1984) (en banc) (as amended). As trial counsel for Ms. Smith advised the trial judge after his ruling, however, the decision in *Davis* was vacated when this court decided to grant the petition for rehearing en banc, 441 A.2d at 1000. The en banc court was evenly divided and issued an order issued affirming the judgment on appeal. 470 A.2d 1248. The trial judge in this

---

[3] The trial judge revealed that he had "listened to a recording of the proceeding before the interview and judgment officer [in the case involving Greenway's complaint for possession due to nonpayment of rent from December 2012 through February 2013] and [Ms. Smith] not only did not raise a claim of housing code violations at that time, but she affirmatively stated that there were no housing code violations in her unit." In addition, the trial judge reviewed the transcript of the proceedings in the case involving Greenway's complaint for possession due to nonpayment of rent from December 2013 through January 2014, and Ms. Smith "did not raise any claim of housing code violations at that time."

case noted that he "would feel more confident" about his ruling if the en banc court had not vacated this court's panel decision in *Davis*, but nevertheless decided to rely on the trial court's decision in *Davis* because our en banc court had affirmed the trial court's judgment.

Despite the trial court's ruling limiting the period of her counterclaim, just prior to Ms. Smith's testimony, her trial counsel advised the court that she wanted to introduce testimony about the growth of mold in Ms. Smith's apartment shortly after she moved in "in the fall of 2011," and testimony about Greenway's periodic but inadequate repairs. She also wanted "to enter into evidence photographs of mold predating the January 11, 2014, cut off" because that evidence "makes it more likely that [mold] existed in January 2014." Trial counsel for Greenway objected. The trial court ruled that the evidence would be limited to the period from January 11, 2014 to the date of trial.

### The Parties' Appellate Arguments

Ms. Smith contends that her "failure to bring permissive counterclaims in 2013 and 2014 presents no bar to her counterclaim in this case, because the failure to

bring a permissive counterclaim has no *res judicata*, or claim preclusion, effect." She argues that under Super. Ct. L&T R. 5 (b), which provides, in part, that a defendant "may assert . . . a counterclaim," counterclaims in the L&T Branch of the Superior Court are "permissive." She contends that the District's decision to make these counterclaims permissive (1) is consistent with the purpose articulated in Super. Ct. L&T R. 1, which provides that the L&T rules "shall be construed to secure the just, speedy, and inexpensive determination of every action," and (2) is consistent with Super. Ct. L&T R. 2, which specifically excludes Super. Ct. Civ. R. 13 (concerning counterclaims) from the list of Superior Court Rules of Civil Procedure that apply to the L&T Branch. If counterclaims are deemed compulsory in the L&T Branch, Ms. Smith asserts, the goal of speedy, expedited proceedings in eviction cases would be defeated by a more lengthy proceeding; and that unless such counterclaims are regarded as permissive, unrepresented litigants like herself who enter into consent judgments or who confess judgment in eviction cases "would not only have waived . . . *defenses* to the landlord's claims . . . but also would have forever given up a counterclaim stretching back years and potentially valued at thousands of dollars."

13

Contrary to Ms. Smith's position, Greenway argues that "by entering into the confessed judgment (and consent judgment) in a prior case, [Ms. Smith] foreclosed her ability to bring a counterclaim that extends past that most recent date," that is, "the very nature of the landlord-tenant relationship requires that a judgment for any given month necessarily also resolves claims that a tenant may have in the months that precede it."[4] Greenway relies on the principle that "a party is barred from raising all issues that might have been raised in a prior action." Greenway further maintains that there is an ongoing relationship between a tenant and a landlord, and that a landlord's action for non-payment of rent, and a tenant's counterclaim to reduce the amount of rent sought both arise out of the same transaction, that is, the lease agreement between the landlord and the tenant. Thus, *res judicata* "requires [Ms. Smith's] counterclaim be limited as it was by the trial court," because "a tenant's raising of any housing code violations, while permissive under Super. Ct. L&T R. 5 (b), is required in order to resolve a landlord's action for possession for

---

[4] Greenway emphasizes, as did the trial court, that in the prior cases where Greenway filed a complaint for possession based on nonpayment of rent, Ms. Smith did not assert housing code violations even though she testified at the trial in this case that the violations began in 2011 and that "[i]t's been like that ever since I moved in." Greenway also reiterates the trial court's reference to Ms. Smith's affirmative statement in February 2013 that "there were no housing code violations in her unit."

failure to pay rent."[5]  In addition, Greenway argues that although Ms. Smith was unrepresented in the trial court, she is "experienced" because Greenway "has filed thirteen cases against [her] since the inception of her tenancy in 2011," most of which were dismissed because she paid back rent prior to the initial hearing date on the landlord's action.  Moreover, Greenway asserts, the L&T Branch provides resources for unrepresented tenants.

In her reply brief, Ms. Smith emphasizes Greenway's "dispositive concession" that "counterclaims based on housing code violations for months as to which there was no judgment [in the trial court][,] are 'permissive under Super. Ct. L&T R. 5 (b).'"  Ms. Smith contends that "[t]he fundamental flaw in [Greenway's] argument is that it relies on supposed unique aspects of the landlord-tenant relationship to justify departing from the *res judicata* consequences of a special counterclaim rule that was *specifically adopted to govern eviction cases in the Landlord and Tenant Branch*"; that is, "*permissive* counterclaims like Ms. Smith's are subject to an exception to that general [claim-preclusion] rule:  they may be

---

[5]  The essence of Greenway's argument is that (a) a landlord wouldn't be permitted to obtain a judgment for one month's rent and then bring a later action seeking to recover earlier rent from the same tenant; and (b) tenants similarly should not be permitted to reach back to earlier months' rents after the conclusion of a lawsuit about a given time period.

brought in a separate, later proceeding." However, Ms. Smith has conceded "that she cannot re-litigate the amount of rent due for months specifically covered by two prior judgments between the parties."[6] Ms. Smith also maintains that Greenway's argument that her counterclaim and its action arise out of the same transaction is "irrelevant" and is based on a principle that governs Super. Ct. Civ. R. 13 that has been expressly excluded from application to counterclaims in the L&T Branch. Finally, Ms. Smith contests Greenway's assertion that she is an experienced litigant in the L&T Branch and has access to resources in that branch – arguing that most of Greenway's actions were dismissed before Ms. Smith was required to appear in court; that any resources she consulted in the L&T Branch were likely to have told her that "counterclaims are permissive and that the failure to raise them has no future preclusive effect"; and that "[t]he reality is that the vast majority of unrepresented tenants likely do not understand the most basic legal concepts governing their legal disputes, much less complex legal questions such as claim preclusion."

---

[6] Ms. Smith does not concede that she is precluded from claiming a rent abatement in the earlier years and months not covered by Greenway's prior judgments (confession and consent), due to her affirmative statement in February 2013 that there were no housing code violations in her unit, and because of her failure to mention such violations. Rather, she argues that "[j]udgments can have preclusive effects" but "parties' statements do not." She contends that "[a]t best [her] statement is an admission and fodder for future cross-examination," but "it is irrelevant to claim preclusion analysis."

***Standard of Review, Applicable Legal Principles, and Pertinent Rule***

Under D.C. Code § 17-305 (a) (2012 Repl.), "th[is] court may review [the trial court's ruling after a bench trial] both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." We review questions of law (including questions concerning the proper interpretation of our case precedent) *de novo*. *See Parcel One Phase One Assocs., L.L.P. v. Museum Square Tenants Ass'n, Inc.*, 146 A.3d 394 (D.C. 2016).

"Under the doctrine of claim preclusion, [i.e., res judicata,] a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Smith v. Jenkins*, 562 A.2d 610, 613 (D.C. 1989) (citing *Lawlor v. National Screen Serv.*, 349 U.S. 322, 326 (1955) (internal quotation marks omitted)). "[A] judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented[.]" *Henderson v. Snider Bros., Inc.*, 439 A.2d

481, 485 (D.C. 1981) (internal quotation marks and citation omitted). "A 'claim' or 'cause of action,' for purposes of claim preclusion, comprises all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Smith*, *supra*, 562 A.2d at 613 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1) (1982)). "[T]he 'transaction' or 'occurrence' is the subject matter of a claim, rather than the legal rights arising therefrom[.]" *Id*. (citing *Clark v. Taylor*, 163 F.2d 940, 942-43 (2d Cir. 1947) (internal quotation marks omitted)).

Super. Ct. L&T R. 5 (b) provides:

> In actions in this Branch for recovery of possession of property in which the basis of recovery is nonpayment of rent or in which there is joined a claim for recovery of rent in arrears, the defendant may assert an equitable defense of recoupment or set-off or a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises.

Rule 5 (b) authorizes a defendant in the L&T Branch to plead limited equitable defenses and to lodge a limited counterclaim in a plaintiff's action for possession of property based on the nonpayment of rent. *Id*. The equitable defenses specified

are recoupment and set-off, and the counterclaim is restricted to a specified type of money judgment (one based on payment of rent or on expenditures claimed as a credit against rent). *Id*.; *see Shin v. Portals Confederation Corp.*, 728 A.2d 615, 621 (D.C. 1999) ("Rule 5 strictly circumscribes the defenses and counterclaims a defendant may assert in the [L&T] Branch.") (internal quotation marks and citation omitted); *Brown v. Young*, 364 A.2d 1171, 1173 (D.C. 1976). ("Few defenses are available in possessory actions.")

The counterclaim authorized in Rule 5 (b) is "permissive" since the rule uses the language "may assert." *Hines v. John B. Sharkey Co.*, 449 A.2d 1092, 1093-94 (D.C. 1982) (discussing "permissible counterclaims" under Rule 5 (b)); *see also Rowland v. Harrison*, 577 A.2d 51, 55-56 (Md. 1990) (Maryland's counterclaim rule that uses the language "may assert" is "by its plain terms . . . permissive and not mandatory."). "The permissive counterclaim rule simply authorizes the filing as a counterclaim of any separate or independent claim against a plaintiff that would not have been permitted before the rule was adopted." *Henderson*, *supra*, 439 A.2d at 486; *see also Marbury Law Grp., PLLC v. Carl*, 799 F. Supp. 2d 66, 74 (D.D.C. 2011) (under Virginia's permissive counterclaim law, "the general rule is that 'the failure to assert a counterclaim does *not* bar a later action on the counterclaim.'").

Counterclaims involving housing code violations in the District of Columbia are viewed as separate or independent claims, and generally, "a tenant may base a counterclaim under Super. Ct. L&T R. 5 (b) on housing code violations that predate the period for which the landlord claims rent is due." *Hines*, *supra*, 449 A.2d at 1095.

Under the RESTATEMENT (SECOND) OF JUDGMENTS, § 22, a tenant's failure to file a permissive counterclaim in an earlier action, by the landlord for possession due to non-payment of rent is not automatically barred by the doctrine of *res judicata*. Section 22 provides:

(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in [s]ubsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is

> such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

The limit on a permissive counterclaim in a later action is embodied in § 22 (2)(b) of the Restatement, the "nullification exception." *Marbury Law Grp., PLLC*, *supra*, 799 F. Supp. 2d at 74. The permissive counterclaim will not be allowed if success on the counterclaim "would nullify the initial judgment or would impair rights established in the initial action." RESTATEMENT (SECOND) OF JUDGMENTS § 22 (2) (b); *see also Shin*, *supra*, 728 A.2d at 624.

*Discussion*

The question that confronts us in this case is whether Ms. Smith's failure to file counterclaims for housing code violations in Greenway's 2012 and 2013 actions for possession due to non-payment of rent precludes her from filing the counterclaim in Greenway's current action for possession and from claiming that the housing code violations date back to 2012. To answer that question, we first focus on the nature of the counterclaim rule in Super. Ct. L&T R. 5 (b). The parties agree that the

counterclaim referenced in the rule is permissive, not compulsory. That much is clear under District law.

Since at least 1947, District law has recognized that counterclaims may be permissive, albeit under Rule 13 of the Federal Rules of Civil Procedure. *See De Bobula v. Tamamian*, 55 A.2d 204, 205 (D.C. 1947). Historically, the L&T Branch has operated under a different rule when a landlord filed for recovery of possession of premises leased to a tenant due to the tenant's nonpayment of rent. Rule 4 (c) of the L&T Branch of the Court of General Sessions, which was the trial court prior to court reform, specified that in such actions "tenants may set up an equitable defense or claim by way of recoupment or set-off in an amount equal to the rent claim." *Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1073 n.3 (D.C. Cir. 1970). The rule also stated that "No counterclaim may be filed unless plaintiff asks for money judgment for rent." *Id*. Moreover, a tenant could not counterclaim for money damages if the landlord's action only sought possession and no money damages. *Id*. When tenants began to rely on defenses such as breach of the landlord's contractual obligations under the lease or that the lease agreement was illegal or void *ab initio* due to the unlawful condition of the premises, the traditional summary nature of landlord actions for possession became protracted due to litigation relating

to these defenses. *See Bell v. Tsintolas Realty Co*., 139 U.S. App. D.C. 101, 108-09, 430 F.2d 474, 481-82 (1970) (discussing the issue and stating that "the landlord has lost the advantage of the summary proceeding and is instead exposed to a prolonged period of litigation without rental income."); *see also Brown v. Southall Realty Co.*, 237 A.2d 834 (D.C. 1968).

By 1976, after court reform, this court began to re-emphasize the necessity of adhering to the summary nature of landlord actions for possession. *See Killingham v. Wilshire Invs. Corp.*, 739 A.2d 804, 808 (D.C. 1999) (emphasizing "the simplified procedures" of the L&T Branch, "which are designed to insure an expeditious resolution of landlord-tenant disputes") (internal quotation marks omitted); *Brown*, *supra*, 364 A.2d at 1173 (emphasizing the limited defenses available in a possessory action); *Winchester Mgmt. Corp. v. Staten*, 361 A.2d 187, 192 n.14 (D.C. 1976) "[A] "valid and well-recognized objective is the prompt settlement of possessory disputes" and "[w]e decline to further defeat the summary nature of a possessory action by sanctioning the resolution therein of additional claims which the tenant might seek to interpose.").

It is in this historical context that we read the plain words of Super. Ct. L&T R. 5 (b), the successor provision to Rule 4 (c). Rule 4 (c) couched the counterclaim part of the rule in negative terms, "[n]o counterclaim may be filed unless plaintiff asks for money judgment for rent." Rule 5 (b) states the counterclaim part of the rule in positive terms, "the defendant may assert . . . a counterclaim for a money judgment based on the payment of rent or on expenditures claimed as credits against rent or for equitable relief related to the premises." This nuanced change in the rule makes clear that a defendant may, but does not have to, assert a counterclaim in a landlord's action for possession because the counterclaim is not mandatory; because it is permissive, it may be filed at a later date, and may even cover "housing code violations that predate the period for which the landlord claims rent is due." *Hines*, *supra*, 449 A.2d at 1095. In sum, the clear answer to the first question on which we have focused is that, like Maryland's counterclaim rule, *Rowland*, *supra*, 577 A.2d at 55-56, Super. Ct. L&T R. 5 (b) is permissive, not compulsory. It is permissive because the regulatory goal is to safeguard the summary, expeditious nature of the action for possession due to nonpayment of rent, so that a landlord will not have a prolonged wait for any rent payments that are due. Simultaneously, the regulatory goal is to avoid summarily cutting off the right of a tenant to assert specified

defenses and counterclaims due to the condition of the premises or the landlord's actions.

*Hines* does not squarely answer part of the key question that is presented in this case; whether the doctrine of *res judicata* precludes a tenant from filing a counterclaim in a current landlord possessory action that requests a rent abatement for housing code violations that predate the current action, even though the tenant did not file a counterclaim in prior landlord actions for possession due to nonpayment of rent. This is the second question we address.

Both parties discuss our decision in *Henderson*, a case involving principles of *res judicata*. Ms. Smith argues that *Henderson* is not applicable to the instant case, and Greenway contends that the "description" of *res judicata* articulated in that case is applicable here. While it is true that *Henderson* sets forth principles of *res judicata*, it does not control the outcome of this case. *Henderson* involved a Maryland foreclosure action decreed by a Maryland court, followed by a fraudulent sale action in the District of Columbia trial court. 439 A.2d at 483. Significantly, we stated that Maryland's "permissive counterclaim rule has no bearing on this case and that plaintiffs-appellants here *should have asserted fraud as a defense* to the

foreclosure action." *Id*. at 486 (emphasis added). Thus, *Henderson* did not consider *res judicata* principles in the context of a permissive counterclaim.

Because this court has no precedent squarely on point, we turn to § 22 of the RESTATEMENT (SECOND) OF JUDGMENTS to resolve the question presented in this case. Under § 22 (2)(b), we must ask whether the "successful prosecution of [Ms. Smith's counterclaim] action would nullify [Greenway's] [2012 and 2013] judgment[s] or would impair rights established [in those actions]." *Id.* (quoting *North Am. Cold Storage v. County of Cook*, 531 F. Supp. 1003, 1008-09 (N.D. Ill. 1982).

We are persuaded that Ms. Smith's counterclaim action would not nullify Greenway's 2012 and 2013 confessed judgment and judgment by consent, even if she made no mention of housing code violations during those actions. For purposes of the *res judicata* doctrine, the "transaction" or "occurrence," that is, the subject matter of Greenway's 2012 and 2013 actions, was its right to possession of the property because of nonpayment of rent in accordance with the lease agreement. *See Smith*, *supra*, 562 A.2d at 613. The "transaction" or "occurrence," that is, the subject matter of Ms. Smith's counterclaim (as opposed to the assertion of a defense

based upon an illegal or void lease), however, is the condition of her apartment unit, in violation of housing code regulations.[7]

Not only is the subject matter of Greenway's prior actions different from that of Ms. Smith's counterclaim in the current action, but significantly, the rules applicable to the bringing of claims by a plaintiff, like the rules applicable to mandatory counterclaims, are different from the rules applicable to permissive counterclaims under the L&T rules. As we declared in *Henderson*, *supra*, "the permissive counterclaim rule authorizes the filing as a counterclaim of any separate or independent claim against a plaintiff that would not have been permitted before the rule [L&T R. 5 (b)] was adopted." *Id*. at 486. Consequently, "a tenant may base a counterclaim upon Super. Ct. L&T R. 5 (b) on housing code violations that predate the period for which the landlord claims rent is due." *Hines*, *supra*, 449 A.2d at 1095.

---

[7] In the context of the unique L&T counterclaim rule and the law pertaining to res judicata or claim preclusion, we agree with Ms. Smith that, as a matter of law, judgments may have preclusive effects, but a party's statement does not have preclusive effect. *See Smith*, *supra*, 562 A.2d at 613, and *Henderson*, *supra*, 439 A.2d at 485), articulating the res judicata or claim preclusion rule in terms of the effect of a *judgment* in a prior case.

Furthermore, Ms. Smith's judgment on the counterclaim would not "nullify [Greenway's 2012 and 2013] judgment[s] or . . . impair rights established in [those actions]," within the meaning of § 22 of the RESTATEMENT (SECOND) OF JUDGMENTS. *Shin*, *supra*, 728 A.2d at 624 n.16. Greenway's right to the two months of rent claimed and awarded to it in each of the actions in 2012 and 2013 would not be affected by Ms. Smith's counterclaim, as she has acknowledged. Greenway's right to those four months of rent, however, could not be extended to the other months in 2012 or 2013 to cut off any right Ms. Smith may have to rent abatement in those months, due to Greenway's violation of housing code regulations.

Moreover, we are not persuaded that Ms. Smith's affirmative statement about the absence of housing code violations, or her failure to mention such violations, in Greenway's prior actions that focused on a total of four months during the period prior to January 11, 2014, would raise some sort of judicial estoppel, especially given testimony about the painting over of mold, or the addition of compound on which more paint was applied to hide the mold in Ms. Smith's unit. While Ms. Smith's affirmative statement or her failure to mention the housing code violations could conceivably be regarded as an admission, the critical question is how much

evidentiary weight that statement would be given in light of the other evidence presented.

In short, the trial court should not have limited Ms. Smith's counterclaim to the period beginning on January 11, 2014, rather than allowing her to present proof of housing code violations in the months of 2012 and 2013 not covered in Greenway's possessory action judgments.[8]   Therefore, we hold that counterclaims under Rule 5 (b) of the Landlord and Tenant Branch are permissive and that the doctrine of *res judicata* did not bar Ms. Smith's counterclaim relating to part of the years 2012 and 2013.

Accordingly, for the foregoing reasons, we vacate the trial court's judgment in this case and remand the case to the trial court for further proceedings to determine whether Ms. Smith is entitled to rent abatement on her counterclaim in the months of 2012 and 2013 that are not covered by the specific months involved in Greenway's 2012 and 2013 possessory action judgments.

---

[8]   Given our disposition, we do not address the parties' specific arguments regarding unrepresented tenants in the L&T Branch, except to remind trial judges of the "latitude" "afford[ed] to *pro se* litigants in matters of pleading."   *Pajic v. Foote Props., LLC* , 72 A.3d 140, 148 (D.C. 2013) (citing cases).

*So ordered.*